2000 OK CR 11

**Jimmy Dale BLAND, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–98–152.

Court of Criminal Appeals of Oklahoma.

May 16, 2000.

Rehearing Denied June 21, 2000.

An Appeal from the District Court of Tillman County; The Honorable Richard B. Darby, District Judge.

Mark Barrett Indigent Defense System, Norman, Sara Bonnell, Purcell, for Appellant at trial.

John Wampler, District Attorney, Brad Leverett, Dan Deaver, Assistant District Attorneys, Altus, for the State at trial.

Sandra Mulhair Cinnamon, James H. Lockard, Indigent Defense System, Norman, for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Jennifer B. Miller, Assistant Attorney General, Oklahoma City, for the State on appeal.

## *O P I N I O N*

LUMPKIN, Vice Presiding Judge:

¶ 1 Appellant Jimmy Dale Bland was tried by jury and convicted of First Degree Malice Aforethought Murder (21 O.S.1991, § 701.7), Case No. CF–96–90, in the District Court of Tillman County. The jury found the existence of two(2) aggravating circumstances and recommended the punishment of death. The trial court sentenced accordingly. From this judgment and sentence Appellant has perfected this appeal.[1]

¶ 2 Appellant was convicted of the premeditated murder of Doyle Windle Rains. The victim was a longtime resident of Manitou, Oklahoma. He was retired and worked handyman jobs in the area. In November 1996, the victim worked at the Horton family ranch in Tillman County building dog pens and erecting a chain link fence. The victim had hired Appellant to assist him in the job. On November 12, 1996, Appellant and the victim were paid $882.00 for their work. Based upon a prior agreement, the check was made out to Appellant. Between 2:30 p.m. on November 12 and 2:30 p.m. on November 13, 1996, Appellant and the victim cashed the check at the First Southwest Bank in Frederick, Oklahoma.

¶ 3 On November 14, 1996, Appellant drove the victim's Cadillac to Oklahoma City to see Connie Lord, his girlfriend. While in Oklahoma City Appellant spent almost all of the cash in his possession, approximately $380.00. Most of this money was spent on drugs, some of which Appellant and Lord ingested at the time. Appellant left Oklahoma City later that afternoon. Lord gave him $10.00 so he could return home. Appellant drove to the victim's home where he shot and killed him. Appellant retrieved the keys to the victim's pickup from the victim's front pants pocket. He loaded the victim's body into the pickup and drove to a rural area where he deposited the body and covered it with logs and leaves. Appellant returned to the victim's home where he spent the night.

¶ 4 On November 15, 1996, Appellant returned to the home he shared with his mother, Ruby Hess, in Davidson, Oklahoma. Appellant was driving the victim's Cadillac. Appellant said he was going to work with the victim. Instead, Appellant switched vehicles and drove the victim's pickup to Oklahoma City. Meeting Connie Lord, he told her he had killed the victim. Later that evening, Lord phoned her sister, Frances Lewis, and asked her to call Hess to check on the victim's welfare. Hess and the victim were dating and had discussed marriage. As a result of her conversation with Lewis, Hess phoned the Tillman County Sheriff.

¶ 5 On November 17, 1996, Sheriff Billy Hanes went to the victim's residence. No one answered his knock at the front door. He noticed the victim's Cadillac in the driveway, but did not see the pickup. Sheriff Hanes then went out to the property where the victim ran cattle, but again found no sign of the victim. Returning to the victim's home, Hanes, with the assistance of agents from the Oklahoma State Bureau of Investigation (O.S.B.I) entered the house and observed several spots of blood on the garage floor. Sheriff Hanes subsequently listed the victim

---

1. Appellant's Petition in Error was filed in this Court on August 5, 1998. Appellant's brief was filed April 20, 1999. The State's brief was filed August 9, 1999. Appellant's reply brief was filed August 30, 1999. The case was submitted to the Court August 26, 1999. Oral argument was held November 2, 1999.

and his pickup on the NCIC register of missing persons. With that entry, anyone who had any contact with the victim or his pickup were to contact Sheriff Hanes.

¶ 6 On November 16, 1996, Appellant, driving the victim's pickup, was involved in a one-car accident near Stroud, Oklahoma. Appellant had driven the pickup off the side of the road. Appellant was arrested for driving under the influence. Appellant was subsequently released on bond, but not before the arresting trooper noticed Appellant had over $300.00 in cash on his person. Appellant was taken to the Econo–Lodge in Chandler, Oklahoma, where he paid for his room with a one hundred ($100.00) dollar bill. On November 17, 1996, Humberto Martinez picked up Appellant from the Econo–Lodge and drove him to the home of James Baker in Oklahoma City. Appellant was subsequently located by the authorities at Baker's home and arrested on November 20, 1996. Initially arrested for the unauthorized use of the victim's pickup, Appellant was taken to the Tillman County Sheriff's office where he confessed to killing the victim and hiding his body. Appellant took officers to the rural area where he had left the body. The body was badly decomposed. However, an autopsy was subsequently performed and the cause of death was found to be a bullet wound to the back of the head.

¶ 7 Appellant admitted to shooting the victim, but claimed he did not intend to kill him. Appellant stated he had borrowed the victim's Cadillac and while it was in his possession, the car had a flat tire. Appellant changed the tire but in so doing, damaged the hubcap. When he returned the car to the victim and explained the situation, Appellant said the victim became very angry. Appellant said the victim's anger escalated to the point where he took a swing at Appellant. Appellant said he was not sure if the victim actually struck him. He said he thought he may have kicked the victim. Both men fell to the floor. Appellant said that a gun he had been carrying, wrapped up in a pair of coveralls, fell to the ground. Appellant said he picked up the gun and fired one shot, hitting the victim in the back of the head. Appellant said he attempted to clean up the

garage area where the altercation had taken place. He then took the victim's body to a field and covered it with a pile of logs.

## JURY SELECTION

¶ 8 In his first assignment of error, Appellant contends the State's reasons for excusing venirepersons Flores and Aldape-say from the jury panel were not race-neutral but were pretextual, and the excusal of the prospective jurors violated the Equal Protection Clause under *Batson v. Kentucky*, 476 U.S. 79, 98, 106 S.Ct. 1712, 1724, 90 L.Ed.2d 69 (1986). The record reflects the trial court overruled Appellant's objections to the exclusion of the prospective jurors. In so ruling, the court noted that Appellant was not of a minority race.

¶ 9 In *Turrentine v. State*, 965 P.2d 955, 964 (Okl.Cr.1998), *cert. denied*, 525 U.S. 1057, 119 S.Ct. 624, 142 L.Ed.2d 562 (1998) we stated:

> In *Batson v. Kentucky*, 476 U.S. 79, 98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that a defendant can raise an equal protection challenge to the use of peremptory challenges at his own trial by showing that the prosecutor used the challenges for the purpose of excluding members of the defendant's own race from the jury panel. *Id.*, 476 U.S. at 96, 106 S.Ct. at 1723–24, 90 L.Ed.2d at 87.
>
> *Batson* established a three (3) part analysis: 1) the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race; 2) after the requisite showing has been made, the burden shifts to the prosecutor to articulate a race neutral explanation related to the case for striking the juror in question; 3) the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. The Court noted the race neutral explanation by the prosecutor need not rise to the level justifying excusal for cause, but it must be a "clear and reasonably specific" explanation of his "legitimate reasons" for exercising the challenges. *Id.*, 476 U.S. at 98 n. 20, 106 S.Ct. 1712, 90 L.Ed.2d 69. The trial court's findings as to discriminatory intent are entitled to

great deference. *Id.,* 476 U.S. at 98 n. 21, 106 S.Ct. 1712, 90 L.Ed.2d 69; *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 1868–69, 114 L.Ed.2d 395 (1991) (plurality opinion). Therefore, we review the record in the light most favorable to the trial court's ruling. *Neill v. State,* 896 P.2d 537, 546 (Okl.Cr.1994), cert. denied, 516 U.S. 1080, 116 S.Ct. 791, 133 L.Ed.2d 740 (1996); *Black v. State,* 871 P.2d 35, 43 (Okl.Cr.1994).

¶ 10 In the present case, we need not determine whether Appellant made a *prima facie* showing of intentional discrimination as the issue is moot. "Once a prosecutor has offered a race neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant has made a *prima facie* showing becomes moot." *Id.* quoting *Hernandez,* 500 U.S. at 359, 111 S.Ct. at 1866, 114 L.Ed.2d at 405.

¶ 11 A review of the record in this case shows the prosecutor offered race-neutral explanations for striking the prospective jurors from the panel.

A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

*Id.* at 964.

■■■ ¶ 12 The prosecutor used his third peremptory challenge to excuse Ms. Flores. He explained to the court that he wanted to excuse Ms. Flores because she had three close relatives who were incarcerated and that she had initially expressed some reluctance when asked about the death penalty. The State's ninth peremptory challenge was used to excuse Mr. Aldape-say. The prosecutor explained that he was concerned about Mr. Aldape-say's inability to understand the English language and that he had expressed sympathy for the defendant.

¶ 13 None of these explanations, on their face, reveal an intent to discriminate against the potential juror on account of race. The prosecutor's reasons for excusing the potential jurors were clear and reasonably specific explanations of the prosecutor's legitimate concerns that Ms. Flores and Mr. Aldape-say could not be fair and impartial jurors.

¶ 14 Once the prosecutor offers a race-neutral basis for the exercise of the peremptory challenge, it is the duty of the trial court to determine if the defendant has established purposeful discrimination.

"[I]n the typical peremptory challenge inquiry, the decisive question will be whether counsel's race neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge.... [E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" *Hernandez,* 500 U.S. at 365, 111 S.Ct. at 1859, 114 L.Ed.2d at 409.

Id. at 965.

¶ 15 The record reflects that at least three other persons who appeared to be of Hispanic/Spanish origin were seated on the jury, without challenges from the State. There is no indication the prosecutor had any history before the court of seeking to purposefully discriminate against jurors on the basis of race. Further, neither race nor ethnic origin was an issue in this case. Therefore, we find no error in the trial court's determination that the prosecutor did not discriminate on the basis of race.

¶ 16 Appellant further argues the prosecutor's explanations were pretextual because there were other prospective jurors with similar traits which were not excused from the jury panel. We have reviewed the *voir dire* of the other venirepersons which Appellant brings to our attention and we find none of them were situated identically with Ms. Flores and Mr. Aldape-say. This Court has stated that "a pretextual reason, that is, one not supported by the record, should be rejected." *Cleary v. State,* 942 P.2d 736, 743 (Okl.Cr.1997), *cert. denied,* 523 U.S. 1079, 118

S.Ct. 1528, 140 L.Ed.2d 679 (1998). In this case, the prosecutor's reasons for excusing the potential jurors were supported by the record.

¶ 17 Therefore, while the trial court's notation that Appellant was not a member of a minority race was not a relevant consideration, *see Powers v. Ohio*, 499 U.S. 400, 409, 111 S.Ct. 1364, 1369–70, 113 L.Ed.2d 411, 424 (1991), we find Appellant has failed to carry his burden of showing purposeful discrimination. Finding no error in the trial court's ruling granting the State's use of its third and ninth peremptory challenges, this assignment of error is denied.

### B.

¶ 18 In his second assignment of error, Appellant contends the trial court committed fundamental error when portions of *voir dire* were conducted in his absence. The record reflects that on the second day of trial, thirty-two potential jurors were called to the judge's chambers for individual *voir dire*. With the first five venirepersons, the trial judge discussed various reasons why the individuals could not serve on the jury. The trial court asked if the defendant was needed in chambers and defense counsel waived his appearance. The remainder of the venirepersons were questioned, at defense counsel's request, to determine whether they had violated the court's directives to refrain from watching or reading news reports about the case.

¶ 19 In *Perry v. State*, 893 P.2d 521, 527–528 (Okl.Cr.1995) we quoted to *Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)[2] in stating:

A defendant has a due process right to be present during trial proceedings " 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.' " The defendant's presence is not required where such "presence would be useless, or the benefit but a shadow."

¶ 20 We further recognized a defendant's state statutory rights in this regard:

A defendant also has a state statutory right to be present during certain communications with jurors. For instance, a trial court should not conduct communications with the jury outside the presence of counsel and the defendant during deliberations; nor should anyone communicate with the jury regarding the merits of the case prior to submission of the case to the jury. However, this Court has also made clear that not every communication between the court and jury outside the presence of counsel is prohibited. For example, communications with the jury regarding simple housekeeping matters do not give rise to a violation of the statutory right to be present. "Rather, prejudice arises when the trial court communicates with the jury outside the parameters of [the statute.]"

*Id.* at 528. (internal citations omitted).

¶ 21 Appellant contends he was prejudiced in that he was unable to advise counsel during jury selection and to participate "in the selection of the persons who will not only determine his guilt or innocence, but will determine whether he lives or dies." He further argues he was denied the prerogative to challenge a juror simply on the basis of sudden impressions or personal knowledge indispensable to the selection of an impartial jury.

¶ 22 Of the first five persons called back to chambers, only two were excused and they were excused for cause. One of those two prospective jurors was ill and the other was going through a divorce and expressed his inability to focus on the trial. As for the others called back to chambers, they were asked brief questions concerning whether they had violated the court's directive not to watch, listen or read any news reports about the case. Only one person was excused because he had heard from a television report

---

**2.** *Overruled in part on other grounds Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

that the defendant had a prior conviction for murder. The remainder of the venire returned to the courtroom and further *voir dire* was conducted, in Appellant's presence. Further, Appellant was present when the peremptory challenges were exercised. We find that Appellant's absence from the brief, limited, individual *voir dire* was neither a due process nor statutory violation. A fair and thorough *voir dire* was conducted in this case, and except for the individual *voir dire*, Appellant was given every opportunity to fully participate in the selection of the jurors who would decide his fate. Any error in conducting the individual *voir dire* in Appellant's absence was harmless beyond a reasonable doubt. *See Rushen v. Spain*, 464 U.S. 114, 117–18, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983).[3] Accordingly, this assignment of error is denied.

### FIRST STAGE ISSUES

#### A.

■ ¶ 23 In his third assignment of error, Appellant challenges the sufficiency of the evidence supporting his conviction, arguing that the evidence was insufficient to prove malice aforethought. Appellant contends that both his videotaped confession and his trial testimony showed that he did not intend to kill the victim, but only reacted by shooting the victim when the victim attempted to assault him. Appellant argues there was a complete lack of direct evidence provided by the State to support the intent element, therefore the evidence must be reviewed under the test used in cases of circumstantial evidence, *i.e.*, the State's evidence must exclude any other reasonable hypothesis except that of guilt. *Smith v. State*, 695 P.2d 1360, 1362 (Okl.Cr.1985).

¶ 24 In reviewing the evidence supporting a conviction, we look to the evidence in its entirety in determining which standard of review to apply. Here, the evidence of Appellant's commission of the offense was both direct and circumstantial. Therefore, we review that evidence under the standard set forth in *Spuehler v. State*, 709 P.2d 202, 203–204 (Okl.Cr.1985); "whether after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found the existence of the essential elements of the crime beyond a reasonable doubt."[4] This Court will accept all reasonable inferences and credibility choices that tend to support the verdict. *Washington v. State*, 729 P.2d 509, 510 (Okl.Cr.1986).

¶ 25 It is uncontroverted that Appellant shot and killed the victim, then disposed of his body. The only controverted issue is his intent. Title 21 O.S.1991, § 701.7.(A) defines malice aforethought murder:

> A person commits murder in the first degree when that person unlawfully and with malice aforethought causes the death of another human being. **Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof.** (emphasis added).

■ ¶ 26 "A design to effect death [*i.e.*, premeditation] is inferred from the fact of killing, unless the circumstances raise a reasonable doubt whether such design existed." 21 O.S.1991, § 702. *See also Hooks v. State*, 862 P.2d 1273, 1280 (Okl.Cr.1993), *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994). Premeditation sufficient to constitute murder may be formed in an instant *Boyd v. State*, 839 P.2d 1363, 1367 (Okl.Cr.1992), *cert. denied*, 509 U.S. 908, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1993) or it may be formed instantaneously as the killing is being committed. *Allen v. State*, 821 P.2d 371, 374 (Okl.Cr.1991). Malice aforethought may be proved by circumstantial evidence.

---

3. We do not address the issue of whether trial counsel's waiver of Appellant's presence was sufficient to constitute a valid forfeiture of Appellant's right to be present at the individual *voir dire* proceedings. We find that issue moot as the nature of the individual *voir dire* did not require Appellant's presence. *See Snyder v. Massachusetts*, 291 U.S. at 105–06, 54 S.Ct. at 332.

4. I continue to urge my colleagues to reject the unsupported dichotomy of tests relating to sufficiency of the evidence. *See White v. State*, 900 P.2d 982, 993–95 (Okl.Cr.1995) (Lumpkin, J. specially concurring). However, in this case the correct test is applied regardless of the method with which it is invoked.

*Cavazos v. State,* 779 P.2d 987, 989 (Okl.Cr. 1989).

¶ 27 The evidence in this case showed that Appellant had told Connie Lord, on several different occasions, that he was going to kill the victim. The evidence also showed Appellant was unhappy with the victim in that he felt he was left to do work that both he and the victim were to do together and that he felt he was not adequately compensated for that work. The victim was shot once, in the back of the head. Appellant was seen the day following the murder in possession of the victim's pickup, the victim's billfold (according to Connie Lord), at least $200.00 in cash, and $125.00 worth of crank. Appellant had only $20.00 in his possession one day previously. Money the victim had received in Appellant's presence three days before the murder was never found. And finally, Appellant told Connie Lord he had killed the victim, not that he had accidentally shot him.

¶ 28 Appellant contends that because portions of Connie Lord's testimony were discredited, because witnesses testified that she was not trustworthy, and because she was rewarded for her cooperation with the authorities in arresting and prosecuting Appellant, her testimony could not support the conviction. The record reflects that portions of Lord's testimony were discredited and two (2) defense witnesses testified she was not particularly truthful. However, it was never shown that she was rewarded for her cooperation with the authorities. In fact, as a result of telling the police about Appellant's confession, Lord was detained on an outstanding warrant and jailed on forgery and drug possession charges.

¶ 29 "The credibility of witnesses and the weight and consideration to be given to their testimony are within the exclusive province of the trier of facts and the trier of facts may believe the evidence of a single witness on a question and disbelieve several others testifying to the contrary." *McDonald v. State,* 674 P.2d 1154, 1155 (Okl.Cr.1984) *citing Smith v. State,* 594 P.2d 784 (Okl.Cr.1979) *quoting from Caudill v. State,* 532 P.2d 63 (Okl.Cr.1975). Although there may be conflict in the testimony, if there is competent evi-

dence to support the jury's finding, this Court will not disturb the verdict on appeal. *Enoch v. State,* 495 P.2d 411, 412 (Okl.Cr. 1972). Here, the jury heard both Connie Lord's testimony and the attempts by the defense to discredit her. The jury apparently gave greater weight to her testimony than the defense attempts at impeachment. Sufficient evidence was presented to prove that Appellant acted with malice aforethought when he killed the victim. After reviewing the evidence in the light most favorable to the State, we find a rational trier of fact could have found the existence of the essential elements of first degree malice aforethought murder beyond a reasonable doubt. This proposition of error is denied.

### B.

¶ 30 In his fifth proposition of error, Appellant contends the trial court erred in finding that defense witness Dr. Sally Church, Ph.D. in Educational Psychology, could not testify concerning the effect Appellant's chemical dependency had on his ability to form the intent to kill. Prior to trial, Appellant filed a Supplemental Discovery notice which included expected testimony from Dr. Church in both stages of trial. Dr. Church's anticipated first stage testimony addressed Appellant's chemical dependency, how that chemical dependency caused an extreme and violent reaction from Appellant when provoked, and other aspects of his personality profile. The State filed a Motion in Limine seeking to prohibit any defense testimony regarding "any evidence elicited from defense experts that invade the province of the jury, and is more prejudicial than probative." After hearing arguments, the trial court, relying on *Hooks v. State,* 862 P.2d 1273 (Okl. Cr.1993), sustained the State's motion "as far as testimony regarding the ultimate issue of intent whether this Defendant could or did form any intent to kill.... "

¶ 31 Appellant now argues on appeal the trial court's decision was an abuse of discretion and deprived him of his rights to present a full defense. He asserts that Dr. Church's testimony regarding his chemical dependency and how it affected him when he was provoked by the victim would have

greatly assisted the jury, especially when they considered the first degree manslaughter instructions. Relying on *White v. State*, 973 P.2d 306 (Okl.Cr.1998), Appellant argues it was reversible error for the trial court to exclude Dr. Church's testimony.

¶ 32 Initially, Appellant's argument that the trial court excluded Dr. Church's testimony is misleading. The trial court's ruling did not exclude the testimony or prevent the witness from testifying, but merely limited the scope of the expert's opinion. It was defense counsel who decided not to call Dr. Church as a witness during the guilt phase of trial based upon the trial court's ruling.

¶ 33 In *Hooks* this Court stated "[w]hen, as in this case, a defendant attempts to elicit expert testimony on the issue of whether he or she possessed the requisite intent to commit the crime in question, such testimony should be excluded." 862 P.2d at 1279. Voluntary intoxication has long been recognized as a defense to the crime of First Degree Malice Murder. *White*, 973 P.2d at 311 *citing Cheadle v. State*, 11 Okla.Crim. 566, 149 P. 919 (1915). However, as discussed in the section of this opinion on first stage jury instructions, specifically Proposition IV, Appellant was not entitled to that defense as he did not establish a *prima facie* case of the elements of that defense. *See White*, 973 P.2d at 312–13. (Lumpkin, J., specially concurring). Therefore, as voluntary intoxication was not a cognizable defense in this case, opinion testimony from an expert concerning Appellant's chemical dependency was not admissible as to the issue of guilt.

¶ 34 In *White*, the evidence supported the voluntary intoxication defense. However, testimony from the defendant's mental health expert was excluded by the trial court due to a discovery violation. On appeal, this Court found that exclusion of that testimony was too severe a sanction as it denied Appellant the ability to present the foundation of his voluntary intoxication defense. The Court stated:

Appellant established, if believed, that he was intoxicated after he ingested six valium tablets and drank vodka the afternoon preceding the homicide. He further testified that he never intended to kill Iwanski and that he could not remember significant portions of the evening of the homicide. Dr. Murphy would have explained the second component of the voluntary intoxication defense, i.e. how Appellant's intoxication affected his mental state and prevented him from forming malice aforethought. Such evidence is critical to establish the defense of voluntary intoxication.

*Id.* at 311. The Court further stated that "[a]lthough Dr. Murphy's opinion would have embraced an ultimate issue to be decided by the trier of fact, it was not prohibited by *Hooks*...." *Id.* Regardless of the ability of the expert to explain the possible effects of alcohol or other substances on the body, the expert opinion could not include whether Appellant did or did not have the intent to kill at the time of the homicide. *Id.* That is a decision for the jury under the law and evidence presented.

¶ 35 In the present case, Appellant established, if believed, that he had ingested cocaine the day he confronted the victim. However, he testified to the details of the shooting and never once indicated that he could not remember shooting the victim or any of the surrounding events. While he denied having the premeditated intent to kill the victim, he did not claim nor did the evidence show that his denial was based upon being so intoxicated that he could not have formed the intent to kill. *See Jackson v. State*, 964 P.2d 875, 892 (Okl.Cr.1998). Therefore, any testimony by Dr. Church as to the effect Appellant's chemical dependency could have had on the formation of his intent to kill would not have been relevant to an issue before the jury. *See* 12 O.S.1991, § 2401.

¶ 36 Additionally, Dr. Church's testimony would not have been relevant in proving the lesser included offense of first degree manslaughter. An element of first degree heat of passion manslaughter is adequate provocation. 21 O.S.1991, § 711. This element is not a subjective test of reasonableness, but an objective test. *See Valdez v. State*, 900 P.2d 363, 377 (Okl.Cr.), *cert. denied*, 516 U.S. 967, 116 S.Ct. 425, 133

L.Ed.2d 341 (1995). Dr. Church's proposed testimony was not that Appellant was acting as a reasonable person at the time of the homicide, but that his chemical dependency at the time caused him to act to an extreme degree when provoked. Accordingly, her testimony would not have been relevant to an issue before the jury and therefore would not have been admissible. *See* 12 O.S.1991, §§ 2401, 2402.

¶ 37 The decision to limit the scope of Dr. Church's expert opinion did not deny Appellant the right to fully present his defense. Appellant presented evidence which showed the killing occurred during a scuffle with the victim and that Appellant's response was not the result of premeditation, but rather a heat of passion reaction to the victim's provocation. Evidence was also introduced as to his ingestion of cocaine the day of the murder and drug induced paranoia. The trial court's ruling did not prohibit any testimony by Dr. Church concerning Appellant's chemical dependence, only testimony on the ultimate issue of intent. Therefore, despite the trial court's ruling, Appellant was able to fully present his defense that he lacked the necessary intent to commit first degree premeditated murder. Accordingly, this assignment of error is denied.

### C.

¶ 38 Appellant contends he was denied a fair trial by the admission of gruesome photographs in his tenth assignment of error. At trial, counsel objected to State's Exhibits 4A, 4B, 5, 6A, and 6B. The trial court admitted all of the exhibits except for 6B, finding it was gruesome. Appellant now argues the trial court erred in its ruling as Exhibit 6A was just as gruesome as 6B and the other photos were not relevant to any issues in the case as he did not contest the fact the victim died from a single gunshot wound.

¶ 39 The admissibility of photographs is a matter within the trial court's discretion. Absent an abuse of that discretion, this Court will not reverse the trial court's ruling. *Conover v. State*, 933 P.2d 904, 913 (Okl.Cr.1997). Photographs are admissible if their content is relevant and unless their probative value is substantially outweighed by their prejudicial effect. *Id.* When the probative value of photographs is outweighed by their prejudicial impact on the jury—that is the evidence tends to elicit an emotional rather than rational judgment by the jury—then they should not be admitted into evidence. *Id.*

¶ 40 The photographs in the present case were 8" × 14" color views of the log pile under which the body was found (Exhibits 4A and 4B), and the body once the logs had been removed (Exhibits 5 and 6A). The photos were relevant as they corroborated testimony that the body was found under a pile of logs and that the victim suffered a single gunshot wound to the head. That Appellant may not have contested this evidence at trial is irrelevant. It remains the State's burden to prove, first, the corpus delicti, and second, that the crime was committed by the accused. *Neill v. State*, 896 P.2d 537, 551–552 (Okl.Cr.1994). Pictures of the murder victim are always useful in establishing the corpus delicti of the crime. *Id.*

¶ 41 Appellant further complains that a view of the victim's head in an advanced state of decomposition in Exhibit 6A is unnecessarily gruesome. The victim's head is not visible in 6A. Only the back of the head is visible in Exhibit 5 and the photo is not so gruesome or "so repulsive as to be inadmissible." *Thomas v. State*, 811 P.2d 1337, 1345 (Okl.Cr.1991), *cert. denied*, 502 U.S. 1041, 112 S.Ct. 895, 116 L.Ed.2d 798 (1992). Accordingly, we find the photographs in this case relevant and any prejudicial effect does not outweigh their probative value. This assignment of error is denied.

### D.

¶ 42 Appellant contends in his ninth assignment of error that his arrest for unauthorized use of a motor vehicle was illegal and the evidence obtained as a result was inadmissible. Prior to trial, Appellant filed a motion to suppress the arrest arguing it was illegal as not founded upon probable cause and because it was merely a subterfuge for investigating Appellant for the homicide.

This motion was overruled. These objections are now raised again on appeal.

¶ 43 Initially, Appellant argues the information in the affidavit supporting the arrest warrant was insufficient to establish probable cause. Appellant contends the only way Sheriff Hanes could have had probable cause to believe that he was in the unauthorized possession of the victim's vehicle was to believe Connie Lord's statement that Appellant had killed the victim. He argues that information from Connie Lord was unreliable. In support of his argument, Appellant urges this Court to abandon the "totality of the circumstances" test in reviewing affidavits for probable cause and return to the standard set forth in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, (1969).

¶ 44 In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) the United States Supreme Court rejected the two-pronged test of *Aguilar* and *Spinelli* for determining probable cause for a totality of the circumstances test. This Court adopted *Gates* and the totality of the circumstances test in *Langham v. State,* 787 P.2d 1279, 1280–81 (Okl.Cr.1990). We are not persuaded to revisit the issue and will analyze the affidavit in this case under the totality of the circumstances. *See Gregg v. State,* 844 P.2d 867, 874 (Okl.Cr.1992); *Newton v. State,* 824 P.2d 391, 393 (Okl.Cr.1991).

¶ 45 Under the totality of the circumstances approach, the task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a air probability that contraband or evidence of a crime will be found in a particular place. *Langham,* 787 P.2d at 1281 *citing Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332–33, 76 L.Ed.2d at 548. "The existence of probable cause is a common sense standard requiring facts sufficient to warrant a man of reasonable caution in the belief that an offense has or is being committed." *Mollett v. State,* 939 P.2d 1, 7 (Okl.Cr. 1997), *cert. denied,* 522 U.S. 1079, 118 S.Ct.

859, 139 L.Ed.2d 758 (1998) *quoting United States v. Wicks,* 995 F.2d 964, 972 (10th Cir.1993). A magistrate's finding of probable cause is to be given great deference. *Id.* The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Langham,* 787 P.2d at 1281.

¶ 46 In the present case, the affidavit submitted to the magistrate provided: 1) on November 17, 1996, Sheriff Hanes received a missing persons report from Ruby Hess concerning the victim; 2) Sheriff Hanes checked the residence of the victim and discovered he was not there; 3) Sheriff Hanes also discovered the victim's pickup was missing; 4) Sheriff Hanes interviewed several relatives and neighbors of the victim's who advised him the victim never let anyone drive his new pickup; 5) Connie Lord had advised the OSBI that Appellant was in possession of the victim's pickup and that Appellant had stated he had killed the victim and taken his pickup and billfold; and 6) on November 16, 1996, the victim's pickup was involved in an accident in which Appellant was the driver and the victim was not present. This information was sufficient for the magistrate to find probable cause existed to issue an arrest warrant for Appellant for the unauthorized use of the victim's vehicle.

¶ 47 Further, we find Ms. Lord's statements sufficiently reliable as they were corroborated by her presence with Appellant in the victim's pickup and evidence that Appellant did in fact have an accident while driving the pickup. The information in the affidavit does not have to be sufficient to sustain a conviction, but only to establish probable cause that a crime had been committed and that Appellant was involved in the crime. *See Mollett,* 939 P.2d at 7. Here, the statements in the affidavit met that standard and the trial court properly overruled the motion to suppress.

¶ 48 Appellant also argues the arrest was pretextual and a subterfuge designed to facilitate a "fishing expedition" for the State into suspicions that the victim had been murdered. At the suppression hearing, Sheriff

Hanes testified he did not believe he had sufficient information to establish probable cause for the homicide at the time he prepared the affidavit for the arrest warrant. Further, the warrant was sought after receiving information from the sheriff's office in Chandler concerning the one car accident involving Appellant and the victim's pickup. While Sheriff Hanes may have had a suspicion that Appellant was involved in the disappearance and possible murder of the victim, this did not preclude him from arresting Appellant for the unauthorized use of the victim's pickup, a crime for which the Sheriff did have probable cause to believe Appellant had committed. Here, the arrest warrant was obtained and served during the regular course of police work. Therefore, any inquiries into ulterior motives of the arresting officers is not relevant as their conduct in executing a properly obtained arrest warrant was justified. *See Lyons v. State*, 787 P.2d 460, 463 (Okl.Cr.1989). Accordingly, this assignment of error is denied.

## *FIRST STAGE JURY INSTRUCTIONS*

### A.

¶ 49 In his fourth proposition of error, Appellant attacks the trial court's failure to *sua sponte* instruct the jury on voluntary intoxication. Reviewing for plain error only, we find none. *Cheney v. State*, 909 P.2d 74, 90 (Okl.Cr.1995).

¶ 50 In *Jackson v. State*, 964 P.2d 875, 892 (Okl.Cr.1998), *cert. denied*, 526 U.S. 1008, 119 S.Ct. 1150, 143 L.Ed.2d 217 (1999) we stated that an instruction on voluntary intoxication should be given "[w]hen sufficient, *prima facia* evidence is presented which meets the legal criteria for the defense of voluntary intoxication, ..." 964 P.2d at 892. The Court further stated:

> In clarifying this test, we now apply this test to the facts of this case. A defense of voluntary intoxication requires that a defendant, first, be intoxicated and, second, be so utterly intoxicated, that his mental powers are overcome, rendering it impossible for a defendant to form the specific criminal intent or special mental element

of the crime. OUJICR(2d) 8–36 & 8–39 (1996).

Id. In applying this test in *Jackson,* the Court found the defendant failed to present evidence that his mental powers were so overcome through intoxication that he could not form the specific intent to kill. The evidence in the present case warrants a similar finding.

¶ 51 Although evidence was presented by both the State (through Connie Lord) and the defense (from Appellant) that Appellant had ingested drugs the day of the murder, the evidence did not support a finding that his mental powers were so overcome through that drug use so that he could not form the specific intent to kill. Appellant testified that he had come down from his "drug high" by the time he arrived at the victim's residence. Further, Appellant testified in detail to his actions and thoughts from the point he arrived at the victim's home until the time he disposed of the body. He said that immediately after he shot the victim, he felt for a pulse. Upon realizing the victim was dead, Appellant testified "[i]t tore me up pretty bad." Such a detailed account of the circumstances surrounding the murder defeats his claim to a voluntary intoxication defense. As we stated in *Turrentine:*

> We find that Appellant's detailed description of the murders and the surrounding circumstances demonstrates that he was in control of his mental faculties and was not in the advanced state of intoxication he attempts to assert. His ability to recount these details undermines his claim on appeal that he was so intoxicated at the time of the murder that he could not have formed the intent to kill. Accordingly, the trial court, in a proper exercise of its judicial duty, found insufficient evidence to warrant an instruction on the defense of intoxication.

965 P.2d at 969 (internal citations omitted).

¶ 52 Accordingly, we find no error in the trial court's failure to submit a instruction on voluntary intoxication to the jury, and this assignment of error is denied.

## B.

¶ 53 Appellant contends in his sixth assignment of error the trial court erred in failing to *sua sponte* instruct the jury on the offense of first degree manslaughter by resisting criminal attempt. Again, reviewing for plain error only, we find none. *Cheney,* 909 P.2d at 90.

¶ 54 In a criminal prosecution, the trial court has the duty to correctly instruct the jury on the salient features of the law raised by the evidence without a request by the defendant. *Atterberry v. State* 731 P.2d 420, 422 (Okl.Cr.1986). This means that all lesser forms of homicide are necessarily included and instructions on lesser forms of homicide should be administered if they are supported by the evidence. *Shrum v. State,* 991 P.2d 1032 (Okl.Cr.1999).[5] However, the failure to object to the instructions (as in this case) waives the issue on appeal. *Id.* at 1036.

¶ 55 In determining whether the lesser form of homicide is supported by the evidence so as to warrant a jury instruction, this Court has reviewed evidence of lesser offenses in several different manners. In *Malone v. State,* 876 P.2d 707, 711–712 (Okl.Cr. 1994), the Court said " . . . the trial court must instruct the jury on every degree of homicide where the evidence would permit the jury rationally to find the accused guilty of the lesser offense and acquit him of the greater." The Court also said "[t]he trial court must determine as a matter of law whether the evidence is sufficient to justify the submission of instructions on a lesser included offense to the jury." 876 P.2d at 712. In *Boyd v. State,* 839 P.2d 1363, 1367 (Okl.Cr.1992), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 775 (1990) we again said the trial court is to determine whether the evidence was sufficient as a matter of law to warrant the instruction, however, "[t]he trial court is to instruct the jury on every degree of homicide which the evidence in any reasonable view suggests." See also *Jackson v. State,* 554 P.2d 39, 43 (Okl.Cr.1976); *Miles v. State,* 41 Okla.Crim. 283, 273 P. 284 (1929). In *Rawlings v. State,* 740 P.2d 153, 160 (Okl.

Cr.1987) we said "an instruction on a lesser included offense need only be given when there is evidence that tends to prove the lesser included offense was committed." While in *Tarter v. State,* 359 P.2d 596, 601 (Okl.Cr.1961), this Court relied on *Welborn v. State,* 70 Okl.Cr. 97, 105 P.2d 187, and stated:

"In a prosecution for murder, the court should instruct the jury on the law of each degree of homicide which the evidence tends to prove, whether it be requested on the part of the defendant or not, and it is the duty of the court to decide, as a matter of law, whether there is any evidence that would tend to reduce the degree of the offense to manslaughter in the first degree."

¶ 56 In order to clear up any confusion caused by this prior case law and to have a uniform standard of review, we find the test to be used in determining whether evidence of a lesser form of homicide or lesser included offense is sufficient to warrant a jury instruction should be no different from the test used to determine when the evidence is sufficient to warrant a jury instruction on the defendant's theory of defense. In *Jackson,* 964 P.2d at 892, this Court held that the test to be used in determining whether the evidence warranted an instruction on voluntary intoxication should be no different from the test used on any other defense. "When sufficient, *prima facia* evidence is presented which meets the legal criteria for the defense of voluntary intoxication, or any other defense, an instruction should be given." *Id.* "Sufficient in this context simply means that, standing alone, there is *prima facia* evidence of the defense, nothing more." *Id.* at 904 fn. 5. *See also White,* 973 P.2d at 312 (Lumpkin, J., specially concurring) quoting *Michigan v. Lemons,* 454 Mich. 234, 562 N.W.2d 447, 454 (1997) ("before a defendant is entitled to an instruction on the defense . . ., he must establish a *prima facie* case of the . . . elements of that defense.") *Prima facie* evidence is defined as:

---

5. While I disagree with this Court's failure to adhere to precedent in *Shrum,* I accede to its application in this case based upon the doctrine of stare decises. *Shrum,* 991 P.2d at 1037 (Lumpkin, V.P.J. concurring in result).

Evidence good and sufficient on its face. Such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient ... to sustain a judgment in favor of the issue which it supports.

*Id.*

¶ 57 It is the trial judge's responsibility to determine whether *prima facie* evidence of the lesser offense has been presented to warrant the instruction. *Omalza v. State*, 911 P.2d 286, 303 (Okl.Cr.1995) (jury instructions are a matter committed to the sound discretion of the trial court).

¶ 58 In the present case, Appellant sought an instruction on the offense of first degree manslaughter by resisting criminal attempt. Title 21 O.S.1991, § 711(3) provides in pertinent part:

Homicide is manslaughter in the first degree in the following cases:

3. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed.

¶ 59 Here, the only evidence supporting Appellant's claim to this instruction is his testimony that the victim assaulted him and that he shot the victim in response to the assault. Appellant argues that his statement is sufficient to warrant the instruction. In *Newsted v. Gibson*, 158 F.3d 1085, 1092 (10th Cir.1988) the Tenth Circuit concluded that when the only evidence supporting the appellant's claim to an instruction on a lesser form of homicide was his own self-serving statements and those statements were contradictory and inconsistent with the other evidence presented at trial, the evidence was insufficient to warrant the jury instruction. The Court stated "[t]he evidence is simply insufficient for a reasonable jury to concluded that Mr. Newstead acted in a heat of passion." *Id.*

¶ 60 In the present, the evidence showed the victim was shot once in the back of the head. This fact would suggest the victim had turned away from Appellant and does not support Appellant's allegation that he was being assaulted by the victim or that he was resisting a criminal attempt by the victim at the time of the shooting. Appellant's self-serving statement does not present sufficient evidence to establish a *prima facie* case of first degree manslaughter by resisting criminal attempt and is therefore insufficient to warrant a jury instruction on that offense. This assignment of error is denied.

### C.

¶ 61 In Proposition VIII, Appellant argues the trial court erred in failing instruct the jury on second degree murder. Appellant's requested instruction was refused by the trial court.

¶ 62 Murder in the second degree occurs "[w]hen perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual." 21 O.S.1991, § 701.8(1). We have held that this statute is applicable where there is no premeditated intent to kill any particular person. *Boyd*, 839 P.2d at 1367. Appellant contends that had the jury received an instruction on Second Degree Murder they could have concluded that he did not intend to kill the victim. We disagree.

¶ 63 As discussed in Proposition III, premeditation sufficient to constitute murder may be formed in an instant. *Id.;* 21 O.S. 1991, § 703. The evidence presented at trial does not support the conclusion that Appellant acted without any premeditated design to effect death. We have held that where there is no evidence to support a lower degree of the crime charged or lesser included offense, it is not only unnecessary to instruct thereon, the court has no right to ask the jury to consider the issue. *Boyd*, 839 P.2d at 1367. Accordingly, we find no error in the trial court's failure to give an instruction on second degree murder. This assignment of error is denied.

### SECOND STAGE ISSUES

### A.

¶ 64 In his fifteenth assignment of error, Appellant contends his rights to a fair and

reliable sentencing proceeding were compromised by the introduction of testimony concerning crimes which occurred twenty years ago. To support the aggravating circumstances of "prior violent felony" and "continuing threat", the State introduced evidence of Appellant's convictions in 1975 for manslaughter and kidnapping. In pre-trial motions, the defense moved to prohibit admission of that evidence arguing it was inflammatory and unfairly prejudicial. Defense counsel sought to limit presentation of the evidence regarding the prior homicide to a showing of the weapon used by Appellant and how the homicide was committed. The trial court overruled the motion. Appellant again raised the motion during trial, arguing he would stipulate to the basic facts of the prior homicide and kidnapping but he did not want to go into any details and retry the prior case. The trial court overruled the objection, finding the State's evidence was not a re-trial of the prior case. Now on appeal, Appellant raises four challenges to the trial court's ruling.

¶ 65 In presenting evidence of the prior homicide and kidnapping, the transcript of the preliminary hearing testimony given by the homicide victim's wife in 1975 was read. The witness, Mrs. Prentice, passed away prior to the 1998 trial in this case. In his first challenge to the trial court's ruling, Appellant contends Mrs. Prentice's testimony was hearsay, without an exception, and its admission deprived him of his rights of confrontation and cross-examination. This objection was not raised at trial, therefore we review only for plain error.

¶ 66 Appellant concedes the testimony was admitted into evidence pursuant to 12 O.S. 1991, § 2804(B)(1). That section provides:

B. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

1. Testimony given as a witness at another hearing of the same or another proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered or, in a civil action or proceeding, a predecessor in interest had an opportunity and **similar**

**motive to develop the testimony by direct, cross or redirect examination;** ... (emphasis added).

¶ 67 Appellant now challenges the "similar motive" requirement arguing he did not have a similar motive in cross-examining Mrs. Prentice as the prior testimony was taken at a preliminary hearing where the burden of proof is substantially lower than that required at trial. Appellant directs us to *Honeycutt v. State*, 754 P.2d 557, 560 (Okl.Cr. 1988) wherein this Court stated:

This Court has never defined the word "motive" as used in Section 2804(B)(1). However, we believe that this word should be used in its ordinary sense. That is, "motive" is the moving power which prompts a person to act in a certain way. Black's Law Dictionary 914 (5th Ed.1979)....

¶ 68 In *Honeycutt*, the defendant was charged and convicted of rape, sodomy and kidnapping. By the time of Honeycutt's trial, the victim had been murdered by co-defendant McBrain. The victim's testimony given at McBrain's preliminary hearing was read into evidence at Honeycutt's trial. On appeal, this Court found the testimony properly admitted under section 2804(B)(1) because Honeycutt had a motive similar to that of his co-defendant in cross-examining the unavailable witness. Neither Honeycutt nor McBrain argued that they did not commit the assaults upon the victim, instead, both relied on the defense of consent inasmuch as they both argued the victim had consented to the sexual activity.

¶ 69 Appellant directs our attention to *United States v. DiNapoli*, 8 F.3d 909, 912 (2nd Cir.1996) where the Second Circuit Court of Appeals interpreted the "similar motive" requirement of Federal Rules of Evidence 804(b)(1) (identical to 12 O.S.1991, § 2804(B)(1)). The court said the test in determining whether there was a similar motive must turn "not only on whether the questioner is on the same side of the same issue at both proceedings, but also on whether the questioner had a substantially similar interest in asserting that side of the issue." In *DiNapoli*, the prior testimony at issue was given at a grand jury proceeding, and

the court held, in part, that because of the reduced burden of proof at the grand jury proceeding, a similar motive between questioning witnesses at the grand jury level and at the actual trial might not exist.

¶ 70 Appellant's reliance on *DiNapoli* is misplaced. The federal grand jury scheme is very different from our state preliminary hearing scheme. In the federal grand jury process, facts and evidence are presented to the grand jury so that a determination might be made by the jurors as to whether the accused should be charged with a criminal offense in a criminal indictment. The accused does not have the right to counsel and there is no cross-examination of witnesses. In Oklahoma, a preliminary hearing is held after criminal charges have been filed by the district attorney. The purpose of a preliminary hearing is to establish probable cause that a crime was committed and probable cause that the defendant committed the crime. 22 O.S.Supp.1994, § 259. The defendant has the right to counsel and witnesses may be cross-examined. The difference between the federal system and our state system distinguishes *DiNapoli* from the present case.

¶ 71 While we find *DiNapoli* is not determinative of the case at hand, it is instructional in that the federal court has said the "similar motive" analysis must be fact specific, and that forgone opportunities for cross-examination do not demonstrate a lack of similar motive. 8 F.3d at 914–15. It is merely a factor to be weighed in assessing whether a similar motive exists. The nature of the proceedings and the cross-examination at the prior proceeding will be relevant though not conclusive on the ultimate issue of similarity of motive. *Id.* at 915. "A purely tactical decision not to develop particular testimony despite the same issue and level of interest at each proceeding does not constitute a lack of opportunity or dissimilar motive for purposes of Rule 804(b)(1)." *United States v. Bartelho,* 129 F.3d 663, 671 n. 9 (1st Cir.1997).

¶ 72 Despite the difference in the burden of proof requirements in our state preliminary hearing and trial, this Court has allowed testimony from a preliminary hearing to be introduced at trial when the witness is unavailable. See *Honeycutt,* 754 P.2d at 560; *Newsted v. State,* 720 P.2d 734, 741 (Okl.Cr.), *cert. denied,* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). In the present case, Appellant was represented by counsel at the prior proceeding and counsel cross-examined Mrs. Prentice. However, Appellant discounts his opportunity to confront the witness arguing that the cross-examination did not address the kidnapping and ensuing police chase, theorizing he knew he was going to be bound over on the murder charge so why spend time on the other charges at preliminary hearing, and that most of the cross-examination was irrelevant to the charges he was facing. A review of the cross-examination of Mrs. Prentice indicates counsel raised a defense of intoxication. Questions posed to the witness concerned her observation that Appellant may have been intoxicated at the time of the incident. Questions were also posed concerning the witness' knowledge of events surrounding the death of her husband when she in fact did not actually witness the events immediately preceding his death.

¶ 73 In cross-examining Mrs. Prentice at the preliminary hearing in 1975, Appellant was concerned with discrediting her testimony and reducing his culpability based upon his level of intoxication. Appellant did not contest his commission of the offenses, but only his level of culpability. The record shows Mrs. Prentice was in an adjoining room in her home when she heard gunshots. She was then ordered to drive Appellant away from the scene. Accompanied by her young son, Mrs. Prentice drove Appellant through town, but was eventually pursued by police and rescued as Appellant was apprehended. Had a trial taken place on the charges,[6] Appellant's motive would have been the same—to discredit the witness and lessen his culpability based upon a defense of intoxication. Furthermore, if Mrs. Prentice was

---

6. After the preliminary hearing, Appellant pled guilty to a reduced charge of first degree man-

slaughter and to the kidnapping as charged.

available to testify in Appellant's trial for the murder of Doyle Windle Rains, Appellant's motive would have been similar—to discredit her testimony as to the shooting based upon the fact she did not witness the actual shooting and lessen his culpability to the entire incident through a defense of intoxication. The failure of counsel to more thoroughly cross-examine Mrs. Prentice on the kidnapping and ensuing police chase does not constitute a lack of opportunity to question the witness or indicate a dissimilar motive for purposes of Section 2804(B)(1).

¶ 74 Further, the great majority of Mrs. Prentice's testimony as to the circumstances surrounding the shooting of her husband and her kidnapping was relevant in proving the aggravating circumstances alleged. The only portion that might not have been relevant was testimony that Appellant also threatened to shoot and did shoot at her brother when he approached her home prior to her kidnapping. However, this incident came out as Mrs. Prentice was explaining the circumstances comprising the events which lead to the charges against Appellant. Accordingly, we find the "similar motive" requirement of Section 2804(B) has been met in this case and the preliminary hearing testimony of Mrs. Prentice was properly admitted.

¶ 75 Appellant next contends it was fundamentally unfair to allow the State to essentially retry him for twenty year old crimes for which the evidence was stale and crucial witnesses unavailable. To support his argument, Appellant relies on *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). In *Gardner,* the Supreme Court ruled that due process was violated when the judge relied, in part, on confidential portions—information not disclosed to the defense or his counsel—of a pre-sentence investigation report in sentencing the defendant. 430 U.S. at 358, 97 S.Ct. 1197 at 1205. In the present case, Appellant was sentenced for the prior offenses in 1975 and remained incarcerated until approximately 1994 or 1995. Approximately four months prior to trial, the State filed a More Definite and Certain Statement of Allegations Set Forth in Bill of Particulars in Re Punishment in which the evidence to support the aggrava-

ting circumstances was set out. Specifically included was evidence as to the homicide of Raymond Prentice and the kidnapping of Brenda Prentice, including the preliminary hearing testimony of Mrs. Prentice. Here, Appellant had notice of the evidence to be used against him, unlike the situation in *Gardner.*

¶ 76 In *Brewer v. State,* 650 P.2d 54, 62 (Okl.Cr.1982), *cert. denied,* 459 U.S. 1150, 103 S.Ct. 794, 74 L.Ed.2d 999 (1983) this Court held that when the State alleges the aggravating circumstance of prior violent felony, it has the burden of presenting sufficient information concerning the prior conviction to prove its contention. If the defendant enters into a stipulation regarding the violent nature of the prior conviction, details of the prior conviction may still be presented in order to support the aggravating circumstance of "continuing threat". *Smith v. State,* 819 P.2d 270, 277 (Okl.Cr.1991) *cert. denied,* 504 U.S. 959, 112 S.Ct. 2312, 119 L.Ed.2d 232 (1992). This Court has placed no age limits on the prior convictions that may be used to support the aggravator.

¶ 77 Here, the details of the prior homicide were relevant in establishing the violent nature of the crime. Evidence of that crime, prior sworn testimony from the victim's wife, a certified copy of the judgment and sentence, and testimony from the sheriff and assistant district attorney involved in the capture and prosecution of Appellant, did not constitute a re-trial of the twenty year old crime. Appellant had notice of the evidence along with the opportunity to rebut, deny or explain the evidence surrounding the prior conviction. To exclude the evidence merely because it was twenty years old would deprive the sentencer of highly relevant information concerning the defendant in violation of *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Accordingly, we find no error.

¶ 78 Appellant next argues evidence that the prior conviction was originally charged as first degree murder and then reduced to first degree manslaughter was extremely prejudicial and improperly admitted. This information was related to the jury when the Tillman County Court Clerk

was called to the stand and asked to identify State's Exhibit 50A, the Judgment and Sentence from the prior conviction. Defense counsel's objection to the testimony was overruled.

¶ 79 The mention of the prior conviction having originally been charged as first degree murder was harmless. Appellant was in fact charged and ordered to stand trial on first degree murder but was able to reduce the charge to manslaughter through a plea agreement.[7] The jury was clearly informed that the prior conviction was for first degree manslaughter. Appellant's argument that the mere mention of the original murder charge weighed more heavily in the jurors' minds than the manslaughter conviction is pure speculation in light of the evidence of Appellant's own conduct during the commission of the prior crime. Appellant has failed to show any prejudice and we find the testimony harmless beyond reasonable doubt.

 ¶ 80 Finally, Appellant challenges the use of the prior convictions to support both the continuing threat and prior violent felony aggravators. This Court has upheld the use of the same act or course of conduct to support more than one aggravating circumstance where the evidence shows different aspects of the defendant's character or crime. *Turrentine*, 965 P.2d at 978; *Paxton v. State*, 867 P.2d 1309, 1325 (Okl.Cr.1993), *cert. denied*, 513 U.S. 886, 115 S.Ct. 227, 130 L.Ed.2d 153 (1994); *Pickens v. State*, 850 P.2d 328 (Okl.Cr.1993), *cert. denied* 510 U.S. 1100, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994); *Green v. State*, 713 P.2d 1032 (Okl.Cr.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 241, 93 L.Ed.2d 165 (1986). Our explanation in *Paxton* applies to the present case. We stated:

> Here, the aggravating circumstance of prior violent felony conviction is supported by the judgment and sentence for manslaughter. This evidence is indicative of Appellant's violent criminal history. When punishment is determined for Appellant's present conduct, the consideration of his past acts, together with his current conduct, shows that the death penalty is the only appropriate sentence. On the other hand, the underlying facts of the manslaughter conviction support the aggravator of "continuing threat" by showing Appellant's propensity for violence and future dangerousness and the need to protect society from his probable future conduct.

867 P.2d at 1325. Here, the aggravators found by the jury do not cover the same aspect of Appellant's character or his crime. Accordingly, we find no error in the admission of the prior first degree manslaughter conviction to support the "prior violent felony" aggravator and the details of that offense, together with the details of the kidnapping to support the "continuing threat" aggravator. This assignment of error is denied.

**B.**

¶ 81 Appellant raises several challenges to the "continuing threat" aggravator in his sixteenth assignment of error. Initially, he challenges the constitutionality of the aggravator. He recognizes this Court has previously rejected his arguments but urges this Court to reconsider its position. We have reviewed Appellant's argument and are not persuaded to revisit the issue. *See Turrentine*, 965 P.2d at 979; *Johnson v. State*, 928 P.2d 309, 316 (Okl.Cr.1996) and cases cited therein.

¶ 82 Appellant next challenges the "continuing threat" jury instruction, Oklahoma Uniform Jury Instruction–Criminal No. 4–74. His argument is twofold. First, he argues the instruction failed to properly set forth the requirement that the jury had to find that the defendant would commit "future acts of violence". He contends that by failing to require the jury to focus on the future threat of violence, an essential element of the aggravating circumstance was omitted from the jury's consideration. Secondly, Appellant asserts the use of the term "probability" is confusing and causes the instruction to be overbroad in its application. He argues that

---

7. In *McCarty v. State*, 977 P.2d 1116, 1125 (Okl. Cr.1998), *cert. denied*, —— U.S. ——, 120 S.Ct. 509, 145 L.Ed.2d 394 (1999) we found the "prior violent felony" aggravator supported by evidence of a conviction for second degree rape which had been reduced through a plea bargain from a charge of first degree rape.

"probability" is a statistical term and the "use of the term 'probability' in [the statutory] sentencing scheme violates the statistical rule of probability."

¶ 83 Oklahoma Uniform Jury Instruction Criminal No. 4–74, given to the jury in Instruction No. 42 provides:

> The State has alleged that there exists a probability that the defendant will commit future acts of violence that constitute a continuing threat to society. This aggravating circumstance is not established unless the State proved beyond a reasonable doubt:
>
> *First,* that the defendant's behavior has demonstrated a threat to society; and
>
> *Second,* a probability that this threat will continue to exist in the future.
>
> (O.R.398).

¶ 84 The Legislature set forth the aggravating circumstance of "continuing threat" in 21 O.S.1991, § 701.12(7). That provision reads: "[t]he existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society...." Instruction No. 42, set forth in the language of the statute, is a correct statement of the law which properly channels the discretion of the jury. *Hawkins v. State,* 891 P.2d 586, 596 (Okl.Cr.1994), *cert. denied,* 516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995).

¶ 85 In *Short v. State,* 980 P.2d 1081 (Okl.Cr.), *cert. denied,* —— U.S. ——, 120 S.Ct. 811, 145 L.Ed.2d 683 (1999) the first part of Appellant's argument was specifically raised and addressed by this Court. In rejecting this challenge to OUJI–CR (2d) 4–74 we stated:

> Appellant also challenges the use of Instruction No. 4–74, OUJI–CR (2d). He contends that instead of limiting the aggravating circumstance of "continuing threat", the instruction actually broadens its application by leaving out any reference to violence. A review of the instruction does not support Appellant's argument. The first paragraph of the instruction explicitly refers to the allegation that there exists a probability that the defendant will commit future acts of violence. That the subse-

> quently listed two criteria which must be proven do not mention violence does not negate the burden on the State to prove a probability that the defendant will commit future acts of violence that constitute a continuing threat to society as listed in the first paragraph. Reading the instruction in its entirety, it is clear the State had the burden of proving the defendant had a history of criminal conduct that would likely continue in the future and that such conduct would constitute a continuing threat to society. Accordingly, we reject Appellant's challenge to Instruction No. 4–74, OUJI–CR (2d). This assignment of error is therefore denied.

980 P.2d. at 1103–04. The same analysis applies in Appellant's case.

¶ 86 In response to the second portion of Appellant's argument, in *Nguyen v. Reynolds,* 131 F.3d 1340, 1354 (10th Cir.1997) the Tenth Circuit said:

> The fact that Oklahoma chooses to grant a sentencing jury wide discretion to make a predictive judgment about a defendant's probable future conduct does not render the sentencing scheme in general, or the continuing threat factor in particular, unconstitutional. Although this predictive judgment is not susceptible of "mathematical precision," we do not believe it is so vague as to create an unacceptable risk of randomness. To the contrary, we believe the question of whether a defendant is likely to commit future acts of violence has a "common-sense meaning" that criminal juries are fully capable of understanding.

¶ 87 We agree with this conclusion and do not find it necessary to engage in Appellant's exercise of analyzing the terms of the statute within the "statistical rules of probability". Neither the rules of mathematics nor statistics apply in a criminal trial. We find the jury instruction, set out in the language of the statute, is a correct statement of the law and properly channels the jury's discretion. Accordingly, we reject Appellant's challenges to OUJI–CR (2d) 4–74, and this assignment of error is denied.

## C.

¶ 88 In his seventeenth assignment of error, Appellant notes that the Judgment and Sentence reflects that he was convicted of both malice aforethought murder and felony murder. Appellant asserts that as the jury found him guilty of malice aforethought murder, the reference to felony murder was a scrivener's error which should be corrected. The State does not dispute this claim. A review of the record supports Appellant's contentions. Therefore, the trial court is ordered to correct the judgment and sentence to reflect the jury's verdict by striking the reference to a conviction for felony murder.

## CLAIMS OF PROSECUTORIAL MISCONDUCT

### A.

¶ 89 In his seventh proposition of error, Appellant argues the prosecutor's comments during closing argument prevented the jury from fully considering his affirmative defense of first degree manslaughter. Appellant concedes the jury instructions regarding consideration of first degree murder and first degree heat of passion manslaughter were proper under *McCormick v. State*, 845 P.2d 896 (Okl.Cr.1993).[8] However, he argues the prosecutor's comments to the effect that the jury could not consider the offense of first degree manslaughter until it had found reasonable doubt for the offense of first degree murder were improper. We review the prosecutor's comments for plain error only as no contemporaneous objection was raised at trial. It is a well established rule of this Court that defense counsel must object, in a timely manner, to objectionable statements. Failure to do so waives all but plain error. *Smallwood v. State*, 907 P.2d 217,

229 (Okl.Cr.1995); *Simpson v. State*, 876 P.2d 690, 693 (Okl.Cr.1994).

¶ 90 Having reviewed the prosecutor's comments, we find any misstatements could not have affected the outcome of the trial. The jury was properly instructed as to the manner in which the offenses were to be considered. Specifically, Instruction No. 36 informed the jury they were to consider all three offenses.[9] Further, the jury was told that all of the rules of law by which they were to weigh the evidence and determine the facts at issue were contained in the written instructions. (O.R. 351, Instruction No. 1). The language used by the trial court in setting out the offenses for the jury's consideration clearly set forth the differing intent requirements of the two offenses, *i.e.*, a murder conviction required proof of a deliberate intent to kill while manslaughter should be found if the killing was done without a design to effect death. The instructions given to the jury did not preclude their consideration of the offense of first degree manslaughter. Appellant has failed to show that the jury did not follow their written instructions. *See Jones v. State*, 764 P.2d 914, 917 (Okl.Cr. 1988) (the presumption is that jurors are true to their oaths and conscientiously follow the trial court's instructions). Any comments to the contrary by the prosecutor were not so egregious as to have denied Appellant a fair trial or to have affected the outcome of the trial.

### B.

¶ 91 In his eleventh assignment of error, Appellant alleges that various instances of prosecutorial misconduct, both first and second stage, deprived him of a fair trial. We will address the claims in the order that Appellant has raised them in his appellate

8. In *McCormick* this Court held that when the lesser included offense of manslaughter is not simply as an alternative to the charge of murder, but an affirmative defense to the crime charged by the State, jury instructions should indicate that proof of the two crimes should be examined together rather than individually in order to ensure that appropriate burdens of proof are allocated. 845 P.2d at 899–901.

9. Instruction No. 36 provided in pertinent part:

If you have any reasonable doubt as to which offense the defendant may be guilty of, Murder First Degree (Premeditated), and/or Murder First Degree (Felony Murder), or Manslaughter First Degree by Dangerous Weapon (Heat of Passion), you may find him guilty only of the lesser offense, Manslaughter First Degree by Dangerous Weapon (Heat of Passion). If you have a reasonable doubt as to the guilt of the defendant on all such offenses, you must find him not guilty of any crime.

brief. We begin our review by reiterating the well established rule that error alone is insufficient to require reversal. Appellant must show not only that error occurred but that the resulting prejudice from the error was such that reversal is warranted. *Smallwood*, 907 P.2d at 228; *Crawford v. State*, 840 P.2d 627, 634 (Okl.Cr.1992); *Harrall v. State*, 674 P.2d 581, 583 (Okl.Cr.1984). Further, we note that many of the instances of alleged misconduct did not receive contemporaneous objections. Therefore, unless specifically noted otherwise, we review for plain error only.

¶ 92 Appellant initially contends in subproposition XIA that the prosecutor improperly stated that he was lying or that he was a liar. It is well established that it is improper to call a witness or a defendant a "liar" or to say that he or she is "lying." *Smallwood*, 907 P.2d at 229. Nevertheless, it is permissible to comment on the veracity of a witness when such is supported by the evidence. *Id.* Here, such comments were proper in light of Appellant's own testimony that statements he had made to his mother and the police were not truthful. We find no error here.

¶ 93 In subproposition XIB, Appellant contends the prosecution demeaned his mitigating evidence, arguing it was not worthy of consideration. He further argues the prosecution misstated the law by arguing that Appellant's mitigation evidence actually proved the aggravating circumstances. Appellant relies on *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and *Penry v. Lynaugh*, 492 U.S. 302, 319, 109 S.Ct. 2934, 2947, 106 L.Ed.2d 256 (1989) wherein the Supreme Court stated that persuading the sentencer to ignore mitigating evidence is error. Of the seven comments Appellant has challenged, only one was met with an objection.

¶ 94 This Court has held a prosecutor has the right to discuss evidence during the second stage in arguing for an appropriate punishment. *Mayes v. State*, 887 P.2d 1288,

1322 (Okl.Cr.1994), *cert. denied*, 513 U.S. 1194, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995). We have also held that evidence used in mitigation can also be used in aggravation. *Medlock v. State*, 887 P.2d 1333, 1349 (Okl. Cr.1994), *cert. denied*, 516 U.S. 918, 116 S.Ct. 310, 133 L.Ed.2d 213 (1995). Here, the jury was appropriately instructed as to the mitigating evidence and was not in any way precluded from considering any and all mitigating evidence.[10] *See Hamilton v. State*, 937 P.2d 1001, 1010–11 (Okl.Cr.1997), *cert. denied*, 522 U.S. 1059, 118 S.Ct. 716, 139 L.Ed.2d 657 (1998). We find no error.

¶ 95 Appellant also claims the prosecutor mislead the jury about its responsibilities with regard to the death sentence in violation of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). In *Caldwell*, the Supreme Court stated that the constitution prohibits imposition of a death penalty which rests on a "determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." 472 U.S. at 320–30, 105 S.Ct. at 2633–40. Here, the prosecutor never intimated in any way that the ultimate responsibility for determining the proper sentence rested anywhere other any the jury. *See Bryson v. State*, 876 P.2d 240, 252 (Okl.Cr. 1994), *cert. denied*, 513 U.S.1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995).

¶ 96 Appellant next argues in subproposition XIC that the prosecution improperly argued the jury had a civic and moral duty to return a conviction of first degree murder and impose the death sentence. Only one of the six instances of alleged misconduct drew an objection. Reviewing the comments in their entirety and in context, we find no error. The prosecutor focused on the jury's duty to serve and render a verdict based upon the evidence. The comments did not suggest that the jury's only moral course was to impose the death penalty. *See Hamilton*, 937 P.2d at 1010. Further, we have

10. Instruction No. 45 stated in pertinent part:
Mitigating circumstances are those which, in fairness, sympathy, and mercy, may extenuate or reduce the degree of moral culpability or blame. The determination of what circumstances are mitigating is for you to resolve under the facts and circumstances of this case.

previously found no error in the prosecutor's acknowledging to the jury the difficulty of their task and asking them seriously to consider the punishment options available. *Cargle v. State,* 909 P.2d 806, 824 (Okl.Cr.1995), *cert. denied,* 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996). The comments here are not equivalent to those in other cases which we have held to be improper and prejudicial as playing on societal alarm or as inflaming the passions or prejudices of the jury. *See Jones v. State,* 610 P.2d 818, 820 (Okl.Cr. 1980). The comments focused on the duty of the jurors to serve and render a verdict based upon the evidence. It did not convey the message that they must find the Appellant guilty based on emotional reaction. *Pickens v. State,* 850 P.2d 328, 342–343 (Okl. Cr.1993), *cert. denied,* 510 U.S. 1100, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994).

¶ 97 Appellant argues in subproposition XID that the prosecutor improperly evoked sympathy for the victim in both first and second stage closing arguments. It is improper for the prosecution to ask jurors to have sympathy for victims. *Tobler v. State,* 688 P.2d 350, 354 (Okl.Cr.1984). However, the prosecution, as well as the defense, has the right to discuss fully from their standpoint the evidence, and the inferences and deductions arising therefrom. *Carol v. State,* 756 P.2d 614, 617 (Okl.Cr.1988). The comments here were based on the evidence and not merely appeals for sympathy.

¶ 98 In subproposition XIE, Appellant contends the prosecution improperly requested the jury to compare his life in prison to the plight of the victim. During the second stage closing argument, the prosecutor stated:

> Maybe the Defendant will be in prison, maybe he will be behind that concrete and those jail bars with his T.V. and his cable and good food. But one thing for sure—Windle Rains won't be here and his family won't be able to be with him, they won't be able to share holidays with him. And Doyle Rains won't get that final visit with him that he hoped for. (Tr.VII, 200).

¶ 99 Counsel is not to compare the plight of the victim and his or her survivors to the advantages of a live defendant in prison. *Short,* 980 P.2d at 1104; *Le v. State,* 947 P.2d 535, 554 (Okl.Cr.1997), *cert. denied,* 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998); *Duckett v. State,* 919 P.2d 7, 19, (Okl.Cr.1995), *cert. denied,* 519 U.S. 1131, 117 S.Ct. 991, 136 L.Ed.2d 872 (1997). However, under the evidence in this case, we cannot find the comments affected the sentence.

¶ 100 In subproposition XIF, Appellant argues the prosecution improperly demeaned and ridiculed him during first and second stage closing argument. We have reviewed the comments noted by Appellant and while we find that some of the comments certainly tested the bounds of proper argument in personal criticism of the Appellant, we do not find that Appellant was unduly prejudiced by the comments or that these comments affected the verdict or the sentence in this case. *Tibbs v. State,* 819 P.2d 1372, 1380 (Okl.Cr.1991).

¶ 101 In subproposition XIG Appellant also argues the prosecutor improperly argued facts not in evidence. These comments will be reviewed under the well established rule that a minor misstatement of fact will not warrant a reversal unless, after a review of the totality of the evidence, it appears the same could have affected the outcome of the trial. See *Hartness v. State,* 760 P.2d 193 (Okl.Cr.1988); *Aldridge v. State,* 674 P.2d 553 (Okl.Cr.1984).

¶ 102 Initially, Appellant directs us to a comment concerning eye glasses discovered near the victim's body. The prosecutor commented that the eye glasses belonged to the victim and their location near the body was evidence of a struggle. No witness identified the eye glasses as belonging to the victim. However, their close proximity to the body could raise a reasonable inference that they belonged to the victim. Any misstatement could not have affected the outcome of the trial.

¶ 103 Next, Appellant complains about the prosecutor stating that Connie Lord's testimony about Appellant having the victim's wallet was corroborated by Trooper Fisher. Reviewing the prosecutor's statements, we do not find the prosecutor ever stated that

Trooper Fisher said he saw Appellant with the victim's wallet. The prosecutor reviewed what each witness had said about the wallet, and commented only that while in Chandler, the trooper saw Appellant with lots of money. The statements of the prosecutor were properly based on the evidence.

¶ 104 Appellant further argues that during second stage closing argument the prosecutor improperly argued that robbery was the motive for the killing. Appellant contends that since the jury had acquitted him of the felony murder charge, to continue to argue that Appellant committed the murder in order to rob the victim was a misstatement of the evidence and mislead the jury as to the inference it could draw. We find the prosecutor's comments were reasonable inferences based on the evidence. Further, as a conviction for either malice aforethought murder or felony murder makes a defendant death eligible, any error in the prosecutor's comments could not have mislead the jury as to the inferences or conclusions it could draw from the evidence.

¶ 105 Finally, in subproposition XIH, Appellant argues the absence of contemporaneous objections to some of the prosecutor's remarks does not constitute waiver of prejudice due to the combined effect of the erroneous arguments. "Allegations of prosecutorial misconduct do not warrant reversal of a conviction unless the cumulative effect was such [as] to deprive the defendant of a fair trial." *Duckett,* 919 P.2d at 19. We have thoroughly reviewed all of the challenged comments in this case, and while some of the comments may have been improper, the cumulative effect of any inappropriate comments was not so egregious as to deprive Appellant of a fair trial. Accordingly, this assignment of error is denied.

### C.

¶ 106 In his twelfth assignment of error, Appellant contends the prosecution improperly shifted the responsibility of imposing the death sentence from the jury onto Appellant and others in violation of *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). This is a continuation of the argument raised above, with Appellant directing us to two additional comments which he claims relieved the jury of its responsibility to evaluate the propriety of the death sentence in Appellant's case. Reviewing these comments for plain error only as no contemporaneous objections were raised, we find nothing in the comments which mislead the jury in an attempt to insulate them from their decision or which sought to give the jury a view of its role in the capital sentencing proceeding that was "fundamentally incompatible with the Eighth Amendment's heightened 'need for reliability in the determination that death is the appropriate punishment'" in this particular case. *Bryson,* 876 P.2d at 252 *quoting Caldwell,* 472 U.S. at 340, 105 S.Ct. at 2645, 86 L.Ed.2d at 246. *See also Walker v. State,* 887 P.2d 301, 322 (Okl.Cr.1994), *cert. denied,* 516 U.S. 859, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995). Further, in light of the explicit instructions given to the jury during second stage concerning their consideration of the sentencing options, nothing in the prosecutor's argument can be said to have diverted the jury from its "awesome responsibility." *Pickens,* 850 P.2d at 343 *quoting Caldwell,* 472 U.S. at 330, 105 S.Ct. at 2640. Accordingly, this assignment of error is denied.

### D.

¶ 107 In his thirteenth assignment of error, Appellant contends the prosecutor improperly commented on his post-arrest silence and the trial court erred in failing to grant a mistrial. We are directed to the prosecutor's cross-examination of Appellant and first stage closing argument. The record shows no objections were raised during the State's cross-examination of Appellant therefore we review only for plain error.

¶ 108 On direct examination, Appellant admitted he tried to cover up the fact that he had killed the victim and that he had lied about the incident for a period of time. On cross-examination, the prosecutor asked Appellant why he did not come forward with the truth prior to being arrested. Appellant cannot now complain about the prosecutor's examination as any error was invited by Appellant opening up the topic of his pre-arrest

silence on direct examination. *See Teafatiller v. State*, 739 P.2d 1009, 1010–11 (Okl.Cr. 1987).

¶ 109 During first stage closing argument, the prosecutor commented on Appellant's post-arrest silence by stating in part "then how do you explain his silence once Agent Briggs arrested him?" Defense counsel objected and requested a mistrial. The trial court sustained the objection and admonished the prosecutor to refrain from commenting on the defendant's post-arrest silence. The motion for a mistrial was overruled and the jury was admonished to disregard the comments of the prosecutor "in regard to the defendant's silence or non-silence prior to his beginning to make the voluntary statement to Agent Goss." Further, the prosecutor was admonished to cover up those sections of a chart prepared by the State which reflected Appellant's post-arrest silence.

¶ 110 Generally, the prosecution may not comment on the defendant's post-arrest silence. *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); *Parks v. State*, 765 P.2d 790, 793 (Okl.Cr.1988). However, error may be harmless where there is overwhelming evidence of guilt and the defendant is not prejudiced by the error. *White v. State*, 900 P.2d 982, 992 (Okl.Cr.1995). Error may also be "cured" where the trial court sustains the defendant's objection and admonishes the jury. *Id.* In this case, any error was cured by Appellant's objection and the trial court's admonishment

to the jury to disregard the comment. Accordingly, this assignment of error is denied.

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

¶ 111 In his fifteenth assignment of error, Appellant asserts he was denied the effective assistance of counsel by counsel's failure to: 1) request jury instructions on voluntary intoxication and first degree manslaughter while resisting criminal attempt; 2) adequately investigate, prepare and present evidence available evidence during both stages of trial; 3) preserve the record; and 4) object o instances of prosecutorial misconduct.

¶ 112 An analysis of an ineffective assistance of counsel claim begins with the presumption that trial counsel was competent to provide the guiding hand that the accused needed, and therefore the burden is on the accused to demonstrate both a deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See also Williams v. Taylor*, —— U.S. ——, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). *Strickland* sets forth the two-part test which must be applied to determine whether a defendant has been denied effective assistance of counsel. First, the defendant must show that counsel's performance was deficient, and second, he must show the deficient performance prejudiced the defense.[11] Unless the defendant makes both showings, "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687,

---

11. In explaining the prejudice prong of *Strickland*, this Court has previously relied on *Lockhart v. Fretwell*, 506 U.S. 364, 369–70, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993) to the extent that an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. Our reliance upon *Lockhart's* analysis into the fundamental fairness of the trial to explain one prong of the *Strickland* test was based upon language from *Strickland* that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," 466 U.S. at 686, 104 S.Ct. at 2064, and "[s]econd, the defendant must show that the deficient performance prejudiced the defense. This requires

showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 694, 104 S.Ct. at 2064. However, recently in *Williams v. Taylor*, 120 S.Ct. 1495 (2000) the Supreme Court backed away from its emphasis on the fundamental fairness of the trial analysis of the prejudice determination. The Court stated that an analysis of the prejudice prong was to focus solely on whether there was a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* Therefore, pursuant to *Williams*, our analysis of an ineffective assistance of counsel claim is based solely upon the two prong test set forth in *Strickland*, and our prejudice determination is based upon whether the outcome of the trial would have been different by for counsel's unprofessional errors.

104 S.Ct. at 2064. Appellant must demonstrate that counsel's representation was unreasonable under prevailing professional norms and that the challenged action could not be considered sound trial strategy. Id. at 688–89, 104 S.Ct. at 2065. The burden rests with Appellant to show that there is a reasonable probability that, but for any unprofessional errors by counsel, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.,* 466 U.S. at 698, 104 S.Ct. at 2070, 80 L.Ed.2d at 700. This Court has stated the issue is whether counsel exercised the skill, judgment and diligence of a reasonably competent defense attorney in light of his overall performance. *Bryson v. State,* 876 P.2d 240, 264 (Okl.Cr.1994), *cert. denied* 513 U.S.1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995).

¶ 113 When a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed. *Id.* at 697, 104 S.Ct. at 2069. Appellant's claim regarding counsel's failure to request jury instructions on voluntary intoxication and first degree manslaughter while resisting criminal attempt can be disposed of based upon a lack of prejudice. As discussed in Propositions IV and VI, such instructions were not supported by the evidence, therefore Appellant would not have received the instructions even if counsel had requested them. Therefore, defense counsel's failure to request the instructions, did not constitute ineffective assistance. *Valdez,* 900 P.2d at 388.

¶ 114 Appellant next complains trial counsel did not conduct a worthwhile investigation into his case as evidenced by his failure to: 1) question available witnesses regarding their knowledge of relevant facts; 2) fully investigate State's witnesses regarding the veracity of their testimony; 3) prepare to fully present all available evidence of Appellant's state of drug induced intoxication during first stage; 4) fully prepare to investigate and defend against the introduction of evidence of the prior conviction during second stage; and 5) constructively use testimony from Dr. Church regarding Appellant's drug addiction as mitigation evidence during second stage.

¶ 115 In support of these arguments, Appellant directs us to affidavits accompanying the application for evidentiary hearing on sixth amendment claims. The affidavits filed in support of a request for an evidentiary hearing are not considered, by reason of their filing with this Court, part of the trial record. *See Dewberry v. State,* 954 P.2d 774, 776 (Okl.Cr.1998). If the items are not within the existing record, then only if they are properly introduced at the evidentiary hearing will they be a part of the trial court record on appeal. *Id.* Here, as the information contained in these affidavits is not properly before the Court at this time, and as Appellant has failed to develop his arguments in his appellate brief, without citation to the affidavits, he has effectively waived review of those arguments. We have consistently held that we will not review allegations of error which are neither supported in the record or by legal authority. *Fuller v. State,* 751 P.2d 766, 768 (Okl.Cr.1988); *Wolfenbarger v. State,* 710 P.2d 114, 116 (Okl.Cr.1985), *cert. denied,* 476 U.S. 1182, 106 S.Ct. 2915, 91 L.Ed.2d 544 (1986). The affidavits will be considered when we address the application for evidentiary hearing on sixth amendment claims.

¶ 116 Appellant next argues counsel was ineffective for failing to preserve the record with an offer of proof as to Dr. Church's expected testimony. Appellant contends that without such a record, this Court cannot adequately conduct its mandatory sentence review. As discussed in Proposition V, the trial court properly limited the scope of Dr. Church's testimony. In the Supplemental Notice of Discovery from Defense filed with and considered by the trial court, defense counsel set out a summary of Dr. Church's anticipated first and second stage testimony. This is a sufficient record from which this Court can conduct its mandatory sentence review. Appellant has failed to show any prejudice by counsel's conduct.

¶ 117 Appellant further finds counsel ineffective for failing to object to inadmissible evidence. Specifically, he directs our at-

tention to the instances of alleged prosecutorial misconduct discussed in Propositions VII, XII, XIII, and XI. As discussed in those propositions of error, most of the prosecutorial comments now complained of on appeal were proper comments on the evidence. Therefore, there is not a reasonable probability that had counsel raised objections that the result of the trial would have been different. *See Workman v. State*, 824 P.2d 378, 383 (Okl.Cr.1991), *cert. denied*, 506 U.S. 890, 113 S.Ct. 258, 121 L.Ed.2d 189 (1992).

¶ 118 Appellant also finds counsel ineffective for failing to lodge the appropriate objection to the admission of evidence of his prior conviction. However, as this evidence was properly admitted, see Proposition XV, Appellant cannot show any resulting prejudice. *See Roney v. State*, 819 P.2d 286, 288 n. 1. (Okl.Cr.1991).

¶ 119 Having thoroughly reviewed the record, and all of Appellant's allegations of ineffectiveness, we have considered counsel's challenged conduct on the facts of the case as viewed at the time and have asked if the conduct was professionally unreasonable and, if so, whether the error affected the jury's judgment. *Le*, 947 P.2d at 556. Defense counsel's performance in this case did not "so undermine[ ] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064. Appellant has failed to meet his burden of showing a reasonable probability that, but for any unprofessional errors by counsel, the result of the trial would have been different as any errors or omissions by counsel did not influence the jury's determination of guilt or decision to impose the death sentence. Accordingly, we find that Appellant was not denied effective assistance of counsel and this assignment of error is denied.

¶ 120 Filed with the direct appeal is an Application for Evidentiary Hearing on Sixth Amendment Claims and Motion to Supplement, pursuant to Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2000). Appellant asserts in the Application that counsel was ineffective in failing to investigate and utilize

available evidence. Attached to the Application are twelve (12) affidavits.

¶ 121 Rule 3.11(B)(3)(6) allows an appellant to request an evidentiary hearing when it is alleged on appeal that trial counsel was ineffective for failing to "utilize available evidence which could have been made available during the course of trial. . . ." Once an application has been properly submitted along with supporting affidavits, this Court reviews the application to see if it contains "sufficient evidence to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." Rule 3.11(B)(3)(b)(i).

¶ 122 In his brief in support of the application, Appellant initially asserts that trial counsel failed to constructively use testimony from Dr. Church regarding Appellant's drug addiction as mitigation evidence during second stage. In her affidavit, Exhibit A, Dr. Church provides an extensive description of Appellant's history of drug abuse and its relevance to the homicide. The record reveals that Dr. Church's testimony at trial was well developed and she was given every opportunity to explain her diagnosis. As discussed in Proposition IV certain conclusions reached by Dr. Church were inadmissible opinion testimony. That appellate counsel would have developed the testimony differently is not grounds for finding trial counsel ineffective. While Appellant may wish trial counsel had done things differently, "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Hooper v. State*, 947 P.2d 1090, 1115 (Okl.Cr.1997), *cert. denied*, 524 U.S. 943, 118 S.Ct. 2353, 141 L.Ed.2d 722 (1998) *quoting Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Accordingly, Appellant has failed to show any deficient performance.

¶ 123 Appellant next argues counsel failed to conduct an adequate investigation into the allegation that he was in possession of the victim's brown wallet. In support of this argument, Appellant relies on the affidavit of Trooper J.D. Fisher (Exhibit E) and the OSBI interview with Mike Simmons (Exhibit H). In his affidavit, Trooper Fisher states, in part, that he discovered only one

wallet on Appellant, a biker or Harley billfold which snapped. Appellant argues that if defense counsel had adequately interviewed Trooper Fisher he would have discovered the Trooper did not discover a brown (the victim's) wallet in Appellant' possession. As for Mike Simmons, Appellant argues that counsel failed to present evidence to impeach Simmons' trial testimony that he had seen Appellant in possession of two billfolds while at the Econo–Lodge in Chandler, with one being a brown billfold. In his interview with the OSBI, Simmons does not make any reference to the billfolds.

¶ 124 Any failure by trial counsel to further investigate and examine Trooper Fisher or Mike Simmons about the victim's wallet was not indicative of ineffective assistance of counsel. Contrary to Appellant's contention, his credibility as a witness was not tied to the missing brown wallet. Appellant's credibility was called into question by his own statements—both pre-trial and during trial. Further, the evidence showed that Appellant was seen in possession of a large amount of cash immediately after the murder (the day after he had spent all of the money previously in his possession) and that the victim's brown wallet was never found. Even if defense counsel had presented additional testimony concerning whether the brown wallet was actually in Appellant's possession, there is not a reasonable probability that had he done so the result of the proceeding would have been different.

¶ 125 Appellant also argues trial counsel should have more fully investigated the veracity of Connie Lord. He directs us to the affidavit of Rhonda Oneal, the custodian of records at the Oklahoma County Jail (Exhibit B), which states that Lord was incarcerated in the Oklahoma County Jail on November 19, 1996, and remained incarcerated for approximately seventy-five (75) days. Lord testified at trial that she had been incarcerated prior to trial and was still incarcerated at the time of trial. Further, two witnesses testified that Lord was not truthful. Any failure to further challenge Lord's veracity was not indicative of ineffectiveness as there no indication that such testimony would have impacted the outcome of the trial.

¶ 126 Next, Appellant contends counsel was ineffective for failing to fully present all available evidence of his drug induced intoxication. He directs us to the affidavits from Connie Lord (Exhibit C), Larry J. Mills (Exhibit F), J. Arden Blough, M.D. (Exhibit G), and Humberto Martinez (Exhibit D). In each of these affidavits the affiant refers to Appellant's drug use immediately prior to the murder and after the murder. Lord stated that Appellant had injected cocaine the day he confronted the victim. Martinez stated that when he picked Appellant up at the motel in Chandler on November 17, 1996, he thought Appellant "had done enough dope to kill a normal person." Mills, the paramedic who responded to the scene of Appellant's accident with the victim's pickup truck in Chandler, stated that Appellant said he had the accident because he was injecting speed and had been on a "couple day high." Blough, the attending physician who treated Appellant when he was taken to the Stroud Memorial Hospital, stated that in his opinion, Appellant's conduct and reactions were consistent with recent drug use. The failure to present this evidence did not impact the outcome of the trial.

¶ 127 Evidence was presented at trial that Appellant had ingested drugs the day of the murder. Lord testified that she and Appellant had injected cocaine the day of the murder. Martinez testified he and Appellant had purchased drugs on November 15, 1996. However, in light of Appellant's own detailed statements about the murder and the circumstances immediately preceding and following the murder, additional evidence of his drug use would not have warranted a jury instruction on voluntary intoxication or had any impact on the outcome of the first stage of trial.

¶ 128 Appellant further claims counsel was ineffective for failing to fully investigate and utilize available evidence in the second stage of trial to counter the State's evidence in aggravation. Specifically, he asserts counsel inadequately defended against the evidence of his prior conviction. He directs us to newspaper articles written at the time of the prior offense which state that

Appellant may have fired his gun at pursuing officers but it was only in response to the officers shooting at him (Exhibits J and K).

¶ 129 The record reveals that counsel strenuously objected to the introduction of evidence regarding Appellant's prior conviction. In an attempt to keep from the jury the details of the prior crime, counsel offered to stipulate to the weapon used and the manner in which the homicide was committed. Further, the jury was informed the prior conviction was for first degree manslaughter, not murder. In light of the proper admission of the details of the crime (to support the "continuing threat" aggravator) any additional evidence which counsel might have produced would not have lessened the severity of the prior crime. Any additional evidence counsel might have presented (as Appellant now suggests from other witnesses to the crime or forensic testing on the fired shells) would not have been found sufficiently mitigating by a reasonable juror to outweigh the evidence in aggravation. We find counsel adequately defended against the prior conviction.

¶ 130 While Appellant has provided a great deal of information in his affidavits, we find he has failed to set forth sufficient evidence to warrant an evidentiary hearing. He has failed to show by clear and convincing evidence a strong possibility that defense counsel was ineffective for failing to utilize or identify the complained-of evidence. *Short,* 980 P.2d at 1108–1109. Accordingly, we decline to grant Appellant's application for an evidentiary hearing.

### ACCUMULATION OF ERROR CLAIM

¶ 131 In his eighteenth assignment of error, Appellant contends that, even if no individual error merits reversal, the cumulative effect of such errors warrants either reversal of his conviction or a modification of his sentence.

¶ 132 This Court has repeatedly held that a cumulative error argument has no merit when this Court fails to sustain any of the other errors raised by Appellant. *Ashinsky v. State,* 780 P.2d 201, 209 (Okl.Cr.1989); *Weeks v. State,* 745 P.2d 1194, 1196 (Okl.Cr. 1987). However, when there have been nu-

merous irregularities during the course of a trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors is to deny the defendant a fair trial. *Bechtel v. State,* 738 P.2d 559, 561 (Okl.Cr.1987). While certain errors did occur in this case, even considered together, they were not so egregious or numerous as to have denied Appellant a fair trial. Therefore, no new trial or modification of sentence is warranted and this assignment of error is denied. *Short,* 980 P.2d at 1109; *Patton v. State,* 973 P.2d 270, 305 (Okl.Cr.1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 347, 145 L.Ed.2d 271 (1999).

### MANDATORY SENTENCE REVIEW

¶ 133 Pursuant to 21 O.S.1991, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of the aggravating circumstances as enumerated in 21 O.S.1991, § 701.12. Turning to the second portion of this mandate, the jury found the existence of two (2) aggravating circumstances: 1) the defendant was previously convicted of a felony involving the use of threat of violence to the person; and 2) there was an existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S.1991, § 701.12(1)(7). Each of these aggravators was supported by sufficient evidence.

¶ 134 "When the sufficiency of the evidence of an aggravating circumstance is challenged on appeal, the proper test is whether there was any competent evidence to support the State's charge that the aggravating circumstance existed." *Romano,* 847 P.2d at 387. "In making this determination, this Court should view the evidence in the light most favorable to the State." *Id.* To prove the "prior violent felony" aggravator, the State is required to go beyond simple proof that a defendant in a capital case had a prior felony conviction to establish the aggravating circumstance. *Brewer,* 650 P.2d at 62. The State must additionally prove that the prior felonies involved the use or threat of violence to the person. *Id.* Here, the judgment and sentence and the evidence sur-

rounding the commission of the prior homicide indicating the use of violence were sufficient to support the aggravator. *See Smith,* 819 P.2d at 279.

¶ 135 To support the aggravator of continuing threat, the State must present evidence showing the defendant's behavior demonstrated a threat to society and a probability that threat would continue to exist in the future. *Hain v. State,* 919 P.2d 1130, 1147 (Okl.Cr.), *cert. denied,* 519 U.S. 1031, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996). A finding that the defendant would commit criminal acts of violence that would constitute a continuing threat to society is appropriate when the evidence establishes the defendant participated in other unrelated criminal acts and the nature of the crime exhibited the calloused nature of the defendant. *Battenfield v. State,* 816 P.2d 555, 566 (Okl.Cr.1991), *cert. denied,* 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992). To prove this aggravating circumstance, this Court has held "the State may present any relevant evidence, in conformance with the rules of evidence, ... including evidence from the crime itself, evidence of other crimes, admissions by the defendant of unadjudicated offenses or any other relevant evidence." *Id.*

¶ 136 In the present case, evidence of Appellant's criminal history, which included a prior homicide,and the callousness in which he committed the murder in this case before taking the victim's keys from his pants pockets and spending the night in the victim's home, after disposing of the body, is sufficient to support this aggravator. *See Hain,* 919 P.2d at 1147–48 (in determining the callousness of the crime, the defendant's attitude is critical to the determination of whether he poses a continuing threat to society.) This evidence shows Appellant has a propensity toward violence which makes him a continuing threat to society.

¶ 137 Turning to the mitigating evidence. Appellant presented six (6) witnesses: his mother, the jailer at the Tillman County Jail, a counselor from Lilly Correctional Center, the coordinator of sentence administration for the Department of Corrections, Dr. Church, and by stipulation, Frances Lewis, Connie Lord's sister. These witnesses testified that Appellant has suffered from mental disorders including post-traumatic stress disorder, schizoid personality disorder, attention deficit disorder and drug dependency; he has a learning disability which impairs his ability to focus on the big picture; he has expressed great remorse over the killing of the victim; he accepts responsibility for the killing; the circumstances of the homicide indicate Appellant was not cruel or vicious; Appellant has been helpful to those who have had difficulty in life; he has adapted well to incarceration in the past and is not likely to cause problems in prison; his abilities are affected by his below normal intelligence; Appellant was profoundly and traumatically affected by his father's injury, mental impairment and subsequent separation from the family; he has been a good worker and a loving family member; Appellant will not be released if his sentence is life without parole; and the homicide was committed at a time when Appellant's judgment was impaired because of drugs. This evidence was summarized into fifteen (15) factors and submitted to the jury for their consideration as mitigating evidence, as well as any other circumstances the jury might find existing or mitigating.

¶ 138 Upon our review of the record and careful weighing of the aggravating circumstances and the mitigating evidence, we find the sentence of death to be factually substantiated and appropriate. Under the record before this Court, we cannot say the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to 21 O.S.1991, § 701.13(C), in finding that the aggravating circumstances outweighed the mitigating evidence. Accordingly, finding no error warranting reversal or modification, the **JUDGMENT** and **SENTENCE** for First Degree Murder is **AFFIRMED** and the **APPLICATION FOR EVIDENTIARY HEARING ON SIXTH AMENDMENT CLAIMS IS DENIED.**

LILE, J., concurs.

STRUBHAR, P.J., JOHNSON, J., and CHAPEL, J., concur in results.