2017 OK CR 15

Isaac Luna ASHTON, Appellant,

v.

The STATE of Oklahoma, Appellee.

Case No. F-2016-15

Court of Criminal Appeals of Oklahoma.

FILED JUNE 1, 2017

APPEARANCES AT TRIAL, STANLEY D. MONROE, KIRSTEN PALFREYMAN, 15 WEST 6TH STREET, STE 2112, TULSA, OK 74119, COUNSEL FOR DEFENDANT

JULIE DOSS, BECKY JOHNSON, ASSISTANT DISTRICT ATTORNEYS, 500 SOUTH DENVER, STE 900, TULSA, OK 74103, COUNSEL FOR THE STATE

APPEARANCES ON APPEAL, JAMES H. LOCKARD, DEPUTY DIVISION CHIEF, OKLAHOMA INDIGENT DEFENSE SYSTEM, P.O. BOX 926, NORMAN, OK 73070

E. SCOTT PRUITT, ATTORNEY GENERAL OF OKLAHOMA, JAY SCHNIEDERJAN, ASSISTANT ATTORNEY GENERAL, 313 N.E. 21ST ST., OKLAHOMA CITY, OK 73105, COUNSEL FOR THE STATE

## OPINION

LUMPKIN, PRESIDING JUDGE:

¶1 Appellant, Isaac Luna Ashton, was tried by jury and convicted of First Degree Murder (Counts 1 & 2) (21 O.S.Supp.2012, § 701.7(A)) and Carrying a Weapon Unlawfully (Count 4) (21 O.S.Supp.2013, § 1272) in District Court of Tulsa County Case Number CF-2014-4108.[1] The jury recommended as punishment imprisonment for life without the possibility of parole in both Count 1 and Count 2. The jury further recommended incarceration in the county jail for thirty (30) days in Count 4. The trial court sentenced Appellant accordingly, ordered the sentence in Count 4 to run concurrent with Counts 1 and 2, and ordered the sentences in Counts 1 and 2 to run consecutively. It is from these judgments and sentences which Appellant appeals.

## FACTS

¶2 On August 18, 2014, Appellant shot and killed both Verdell Walker and Tiara Sawyer. The homicides occurred in the parking lot outside Appellant's apartment at 47th and Darlington in Tulsa, Oklahoma. Four different individuals were outside the apartments that day and observed the incident. At trial, they described what had occurred. None of the witnesses observed any physical contact between the parties. Neither Walker nor Sawyer was armed. Walker did not attack Appellant. He did not fight Appellant for the gun. Instead, Appellant was the aggressor. He shot both Walker and Sawyer after Walker cursed him.

¶3 Appellant, his girlfriend, Tyesha Goff, and his best friend, Doneka Brown, had recently become acquainted with Walker and Sawyer. The duo lived in an apartment near Appellant's home. They visited Appellant's

---

1. Prior to trial the District Court accepted Appellant's plea of guilty to Unlawful Possession of Controlled Drug (Marijuana) (misdemeanor) (Count 3) (63 O.S.Supp.2012, § 2-402) and sentenced him to incarceration in the county jail for one (1) year with credit for time served.

home on the night of August 17th without any problem.

¶ 4 The next morning, Walker and Sawyer asked Appellant for a ride to a tag agency. Goff gave the duo a ride in the Gold Honda CRV which Appellant's mother owned. When they returned to Appellant's apartment, Goff and Sawyer argued over Goff's missing cellphone. The two women yelled loudly at each other.

¶ 5 The argument lasted for close to ten minutes. It grew to include all five of the individuals. Goff and Brown argued with Sawyer as Appellant searched the apartment for the phone. Walker and Sawyer remained in the parking lot. They stood just outside the small fenced enclosure which led to the front door of the apartment. Appellant entered the fray after Walker cursed Goff. He walked to the waist high gate, opened it and declared: "You better step off my lady, Cuz."[2]

¶ 6 Walker backed further out into the parking lot. Sawyer went with him. After several feet, Walker stopped and took a few steps back towards Appellant. He gestured with his hands in the air similar to a referee declaring a touchdown in a game of football. Walker exclaimed, "You're a bitch."[3] He laughed and backed away from Appellant.

¶ 7 Appellant walked out into the parking lot. He drew his Smith & Wesson .38 special from his waist, pointed it at Walker, and declared; "I got your bitch right here."[4] From approximately four feet away, Appellant shot Walker one time in the abdomen. Walker fell to the ground.

¶ 8 Sawyer took off running towards a nearby pole. Appellant chased her and shot her in the head with the gun. After Sawyer fell to the ground, Appellant returned to where Walker lay on the ground. He shot Walker on the side of his head.

¶ 9 Appellant, Brown and Goff fled the scene. Goff drove the trio away from the apartments in the Gold Honda CRV. They travelled to the home of Appellant's mother

in Jenks. The Tulsa Police Department in cooperation with the Jenks Police Department placed the home under surveillance. Brown telephoned her mother and asked her to come pick her up. When she arrived, Brown, Appellant and Goff got into the car. Appellant laid down in the backseat so he could not been seen. However, the surveilling officers had seen him enter the car and they stopped the vehicle and placed him under arrest.

¶ 10 After Appellant waived his rights under *Miranda*, Detective Justin Ritter of the Tulsa Police Department interviewed him concerning the events. Appellant noted that Ritter's shirt indicated that he worked for the Homicide Division and asked Ritter: "Who died?"[5] Appellant did not claim accident, self-defense, or defense of another. Instead, he repeatedly claimed that he did not know anything about the events. He informed Ritter that he was not present at the apartments that day. He claimed that he did not stay at the apartment in question and asserted that he did not know why Ritter was questioning him concerning the deaths of Walker and Sawyer.

¶ 11 Joshua Lanter, M.D., of the State Medical Examiner's Office performed an autopsy on Walker's body. He found that Walker had been shot through the abdomen. This gunshot had transected his aorta and would have likely been fatal. This injury was consistent with Walker turning to run away from the shooter. Lanter further found that Walker had also been shot through the right ear. This gunshot caused excessive injury to Walker's brain and was incompatible with life. This injury was consistent with the shooter firing at Walker while he was on the ground. Lanter further found that Walker did not have any injuries to his hands which would be consistent with fisticuffs. Lanter determined that Walker had died from the gunshot wounds. He recovered both projectiles from Walker's body.

¶ 12 Lanter also performed an autopsy on Sawyer's body. He found that Sawyer had

---

**2.** Tr. III, 747.

**3.** Tr. IV, 666, 698.

**4.** Tr. IV, 666, 699.

**5.** State's Exhibit No. 110.

been shot through the left temple. Lanter was able to recover the projectile from Sawyer's body. He did not find any recent injuries on Sawyer's hands. Lanter determined that the single gunshot wound caused Sawyer's death.

¶ 13 Officers executed a search warrant on the home of Appellant's mother and found Appellant's .38 special handgun and some spent shell casings. Firearms Examiner, Joy Patterson, of the Tulsa Police Department compared the projectiles recovered from the bodies of Walker and Sawyer with the handgun. She determined that the handgun had fired the projectiles which had killed the duo.

¶ 14 Brown testified at trial on Appellant's behalf. Although she had given a different account to the detectives when she was initially interviewed concerning the incident, Brown asserted that Walker had hit Goff. She claimed that Appellant only shot Walker after Walker threatened him and rushed at him.

¶ 15 Appellant testified in his own defense at trial. He wholly admitted that he had repeatedly lied to Detective Ritter during his interview. He further admitted that he was carrying the handgun without a license. Although he asserted that he had not intended to shoot either Walker or Sawyer, Appellant claimed that Walker had hit Goff, threatened to kill him, and came at him. Appellant admitted that he had pulled out the gun and pointed it at Walker but claimed that he had inadvertently pulled the trigger on the gun in reaction to Walker. Appellant asserted that Walker pushed against his free arm, he stepped backwards, and in the process the gun simply fired. Appellant further claimed that Walker had reached for the gun.

¶ 16 Appellant explained that the initial shot hit Walker in the abdomen. He asserted that he fired the gun two more times because Walker continued to advance on him. He related that he closed his eyes, turned his head, and shot the gun twice more from approximately his waist level. He acknowledged that he had fled the scene with Brown and Goff. He asserted that he had panicked.

¶ 17 On cross-examination, Appellant admitted that neither Walker nor Sawyer was armed with any weapons. He acknowledged that his revolver had to be held in just the right position to fire because it was missing the frame lug. Despite this fact, he maintained that he randomly fired the shots which hit Walker and Sawyer in the head. Although he retracted his claim that he fired these shots with the gun at waist level, he continued to assert that he had fired the shots with both his eyes closed and his head turned.

## DISCUSSION

### I.

¶ 18 In his first proposition of error, Appellant contends that he was denied his constitutional right to present a complete defense. Citing Tyesha Goff's invocation of the Fifth Amendment's privilege against self-incrimination, he argues that he was precluded from presenting Goff's account of the homicides.

¶ 19 "[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986) (quotations and citation omitted). However, a defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 1264, 140 L.Ed.2d 413 (1998); *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045–1046, 35 L.Ed.2d 297 (1973). "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 653, 98 L.Ed.2d 798 (1988). This Court has recognized that a meaningful opportunity to present a complete defense does not include the right to compel a witness to give testimony in contravention of the witness's privilege against self-incrimination. *Pavatt v. State*, 2007 OK CR 19, ¶ 43, 159 P.3d 272, 286; *Sherrick v. State*, 1986 OK CR 142, ¶ 6, 725 P.2d 1278, 1282; *Bryant v. State*, 1967 OK CR 196, ¶ 9, 434 P.2d 498, 500.

¶ 20 Appellant, first, argues that the trial court erred when it allowed Goff to

invoke the privilege against self-incrimination. He mistakenly asserts that Goff's recitation of the circumstances which occurred prior to Appellant's flight from the apartment complex would not have tended to subject her to criminal prosecution. We review the trial court's grant of the privilege for an abuse of discretion. *Pavatt*, 2007 OK CR 19, ¶ 42, 159 P.3d at 286.

¶ 21 The United States Supreme Court has always broadly construed the protection of the Fifth Amendment. *Maness v. Meyers*, 419 U.S. 449, 461, 95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975). "Th[e] privilege applies to anyone called as a witness, not just to the accused in a criminal trial; it is not limited to answers which would directly incriminate the witness in the instant proceeding, but extends to any incriminating consequences which would flow from compelled disclosure." *Pavatt*, 2007 OK CR 19, ¶ 43, 159 P.3d at 286. "[It] does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Maness*, 419 U.S. at 461, 95 S.Ct. at 592. "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968).

¶ 22 Reviewing the record in the present case, we find that the trial court did not abuse its discretion. Goff was confronted by a substantial and real hazard of incriminating herself for the offense of Accessory to Felony. 21 O.S.2011, § 175. The prosecutor specifically mentioned this offense when she sought to protect Goff's rights at the pre-trial evidentiary hearing. The evidence at trial appeared to potentially support the filing of such a charge. Certainly, Goff would have tended to incriminate herself if she admitted that she had driven Appellant away from the scene and, thus, helped him avoid or escape arrest. Inst. No. 2-2, OUJI-CR(2d) (Supp. 2015). However, it is also reasonably likely that Goff's answers to questions concerning the events prior to that would have tended to incriminate her or supply a link in the chain of evidence, as well. If Goff acknowledged that Appellant shot and killed Walker and Sawyer without any provocation, this would have tended to establish the third element of the offense of Accessory to Felony, *i.e.*, knowledge that the offender had committed the acts constituting the underlying felony. *Id.* As the privilege against self-incrimination extends to both direct incrimination as well as information which would furnish a link in the chain of evidence that could lead to prosecution, Goff's privilege extended to protect her from testifying about any portion of the day's events. Accordingly, we find that the trial court did not err when it allowed Goff to invoke the Fifth Amendment privilege against self-incrimination.

¶ 23 Second, Appellant alternatively argues that the trial court should have granted Goff immunity in exchange for her testimony pursuant to Article II, Section 27 of the Oklahoma Constitution. This Court's interpretation of this provision is well established.

> In order for a person to secure immunity under the above section of Constitution on account of incriminating evidence given by him as a witness in any court, he must have testified under an agreement made with the prosecuting attorney, approved by the court, or he must have claimed the privilege of silence which must have been denied by the court and such person must have been compelled by the court to testify.

*State v. Barthelme*, 2007 OK CR 40, ¶ 9, 172 P.3d 201, 203–04, *quoting Cortez v. State*, 1966 OK CR 17, ¶ 4, 415 P.2d 196, 199; *Coleman v. State*, 1940 OK CR 109, 70 Okla. Crim. 246, 254, 104 P.2d 1004, 1008 (1940) ("[W]itness must have testified under agreement with the prosecuting attorney, approved by the court, or must have claimed privilege which was denied."). We have determined that the trial court is without power to grant a defense witness immunity under this Constitutional provision. *Mills v. State*, 1985 OK CR 58, ¶ 12, 733 P.2d 880, 882

*(conviction reversed on other grounds on rehearing).*

¶ 24 In the present case, neither of the two avenues for securing immunity under Section 27 occurred. The prosecution did not enter into an immunity agreement with Goff. Thus, there was nothing for the trial judge to approve. Since the trial court properly permitted Goff to invoke the privilege against self-incrimination, she was not compelled to testify. Accordingly, we find that the trial court did not have the authority to grant Goff immunity.

¶ 25 In a single sentence within this claim of error, Appellant alludes to the argument that a rule permitting immunity to only state's witnesses would violate the Equal Protection Clause. As Appellant failed to set out this claim as a separate proposition of error in his brief, we find the issue is waived pursuant to Rule 3.5(A)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2016). *Murphy v. State*, 2012 OK CR 8, ¶ 23, 281 P.3d 1283, 1291.

¶ 26 Third, Appellant alternatively argues that the trial court erred when it failed to admit Goff's out-of-court statement(s) under the statement against interest hearsay exception. In the exercise of the right to present a defense, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. *Simpson v. State*, 2010 OK CR 6, ¶ 9, 230 P.3d 888, 895; *Gore v. State*, 2005 OK CR 14, ¶ 21, 119 P.3d 1268, 1275. "Whether Appellant was denied the right to present a defense ultimately turns on whether the evidence at issue was admissible." *Id.*, 2010 OK CR 6, ¶ 10, 230 P.3d at 895. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Id.*, 2010 OK CR 6, ¶ 9, 230 P.3d at 895.

¶ 27 During discovery proceedings, the State disclosed a Summary of Goff's out-of-court statements to Appellant. The Summary was based off of notes which one of the prosecutors had taken when the State had met with Goff. After Goff invoked her privilege against self-incrimination and became unavailable as a witness at trial, Appellant sought to introduce this Summary under the statement against penal interest exception to the hearsay rule. Appellant requested that a portion of the Summary be read to the jury or, alternatively, the admission of the document as an exhibit. The trial court denied Appellant's request.

¶ 28 Appellant, now, contends that this constituted error. We find that Appellant has not shown that the trial court abused its discretion when it denied admission of the document. Reviewing the record in the present case, we find that Appellant has not shown that the proffered Summary was admissible.

¶ 29 The statements within the Summary document constituted hearsay within hearsay. "Hearsay 'is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *Logsdon v. State*, 2010 OK CR 7, ¶ 34, 231 P.3d 1156, 1168 (*quoting* 12 O.S.2001, § 2801(A)(3)). " 'Hearsay is not admissible except as otherwise provided by an act of the Legislature.' " *Taylor v. State*, 2011 OK CR 8, ¶ 20, 248 P.3d 362, 370 (*quoting* 12 O.S.2001, § 2802). Hearsay within hearsay is only admissible "if each part of the combined statements conforms with an exception to the hearsay rule provided in [the Evidence] Code." *Mitchell v. State*, 2005 OK CR 15, ¶ 47, 120 P.3d 1196, 1209 (*quoting* 12 O.S.2001, § 2805).

¶ 30 In the present case, Appellant has only shown that one part of the combined statements met an exception to the hearsay rule. Goff's statements fell within the statement against penal interest exception to the prohibition against the admission of hearsay. *Ashinsky v. State*, 1989 OK CR 59, ¶ 16, 780 P.2d 201, 204 ("Hearsay testimony is admissible if the declarant is unavailable, the statement made was adverse to the declarant's penal interest, and the statement tends to expose the declarant to criminal liability and is offered to exculpate the accused, and corroborating circumstances clearly indicate the trustworthiness of the statement."). Goff invoked her Fifth Amendment privilege and was unavailable at trial. Her statements suggested that she had knowledge of Appellant's

actions in shooting the unarmed Walker and Sawyer, thus, they tended to expose her to criminal liability for aiding Appellant escape arrest. Brown's testimony sufficiently corroborated the trustworthiness of Goff's statements.

¶ 31 However, Appellant has not shown that the prosecutor's hearsay statements summarizing Goff's story met a recognized hearsay exception. Appellant did not make any attempt to establish that the prosecutor's hearsay statements were admissible at the time of trial. *See Cline v. State*, 1989 OK CR 69, ¶ 8, 782 P.2d 399, 401 (holding proponent of evidence at trial bears burden to lay proper foundation for its admission). On appeal, he has again failed to set forth or argue that the prosecutor's out-of-court statements were admissible under any of the hearsay exceptions in the Evidence Code. Since Appellant has not shown that each part of the combined hearsay statements conformed to an exception to the hearsay rule, we find that the trial court did not abuse its discretion when it determined that the Summary document was inadmissible.

¶ 32 Regardless, we find that the trial court's ruling did not deprive Appellant of a meaningful opportunity to present a defense. *Chambers*, 410 U.S. at 302, 93 S.Ct. at 1049 (holding that evidence which bears "persuasive assurances of trustworthiness" may not be excluded based on a mechanistic application of the rules of evidence when evidence is critical to a defendant's case.). Goff's testimony would have been cumulative to Appellant's other evidence. *Gourley v. State*, 1989 OK CR 28, ¶ 4, 777 P.2d 1345, 1348 (finding defendant not denied right to present defense where witness' testimony would have been cumulative). Brown testified on Appellant's behalf at trial and related a substantially similar account as set forth in the proffered Summary. Appellant gave an analogous story when he testified at trial. As Goff's statements in the Summary were cumulative to the other evidence at trial, we find that exclusion of the Summary did not violate Appellant's right to present a defense.

¶ 33 We further find that there is no indication that admission of Goff's statements from the Summary would have created a reasonable doubt where none had existed before. The prosecutor's Summary was not critical to Appellant's defense. *Primeaux v. State*, 2004 OK CR 16, ¶¶ 49–54, 88 P.3d 893, 903–04 (recognizing that evidence was not critical to defendant's case where there was no indication that witness's statement would create reasonable doubt where none existed before). The State presented compelling evidence of Appellant's guilt. Four wholly uninvolved individuals witnessed Appellant shoot and kill the unarmed Walker and Sawyer without provocation. Their consistent accounts substantially differed from Appellant's claimed defense at trial. In contrast, Appellant's evidence was disputed. Brown had given the police a different account of the events immediately following Appellant's arrest. Appellant's story had dramatically changed over time. He fled the scene after the shooting and denied even being present at the complex that day when the police first questioned him. In addition to being cumulative, Goff's testimony would have been subject to the same impeachment as Brown's account. As with Brown, Goff had related a different account to the police officers immediately following Appellant's arrest. Since Goff's statements in the Summary would not have created a reasonable doubt where none existed before, we find that they were not critical to Appellant's defense. Proposition One is denied.

## II.

¶ 34 In his second proposition of error, Appellant contends that the trial court erred when it gave the jury the uniform instruction concerning the doctrine of flight. He concedes that he waived appellate review of this claim for all but plain error review when he failed to object to this instruction at trial. *Daniels v. State*, 2016 OK CR 2, ¶ 3, 369 P.3d 381, 383. Therefore, we review Appellant's claim pursuant to the test set forth in *Simpson v. State*, 1994 OK CR 40, 876 P.2d 690, and determine whether Appellant has shown an actual error, which is plain or obvious, and which affects his substantial rights. *Tollett v. State*, 2016 OK CR 15, ¶ 4, 387 P.3d 915, 916; *Hogan v. State*, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. This Court

will only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice. *Id.*

¶ 35 " 'This Court has long upheld the giving of flight instructions where the defendant interposed a plea of self-defense or justifiable homicide or testified at trial explaining his departure.' " *Hancock v. State*, 2007 OK CR 9, ¶ 104, 155 P.3d 796, 820, *quoting Mitchell v. State*, 1993 OK CR 56, ¶ 7, 876 P.2d 682, 684, *as corrected* 1994 OK CR 78, 887 P.2d 335. Despite this fact, Appellant urges this Court to eliminate and discontinue the jury instruction on the doctrine of flight as it relates to consciousness of guilt. He argues that the instruction improperly assumes the defendant committed the crime and impermissibly shifts the burden onto the defendant. We have previously considered and rejected these same arguments. *See Andrew v. State*, 2007 OK CR 23, ¶ 115, 164 P.3d 176, 199; *Hill v. State*, 1995 OK CR 28, ¶ 20, 898 P.2d 155, 162–63; *Mitchell*, 1993 OK CR 56, ¶¶ 11–16, 876 P.2d at 685–86. We do so again.

¶ 36 Appellant testified that he had not intended to shoot either Walker or Sawyer but solely reacted to Walker actions. He admitted that he had departed the scene but disputed the assertion that he fled from that location with a consciousness of guilt. Instead, he claimed that he had panicked. Thus, the circumstances of the present case fall within the well-established parameters where the flight instruction has been approved.[6] Accordingly, we find that Appellant has not shown that error, plain or otherwise, occurred. Proposition Two is denied.

### III.

¶ 37 In his third proposition of error, Appellant contends that prosecutorial misconduct deprived him of a fair trial. He concedes that he waived appellate review of his claims for all but plain error review when he failed

to object at trial. *Malone v. State*, 2013 OK CR 1, ¶ 41, 293 P.3d 198, 211–12. Therefore, we review Appellant's claims pursuant to the test set forth in *Simpson v. State*, 1994 OK CR 40, 876 P.2d 690, and determine whether Appellant has shown an actual error, which is plain or obvious, and which affects his substantial rights. *Malone*, 2013 OK CR 1, ¶ 41, 293 P.3d at 211–212; *Hogan*, 2006 OK CR 19, ¶ 38, 139 P.3d at 923.

¶ 38 Appellant asserts that the prosecutor's ethical abuses deprived him of the due process of law. This Court's review is well established. Prosecutorial comments, like jury instructions, are not reviewed in artificial isolation, but must be judged in the context of the entire record. *Romano v. State*, 1995 OK CR 74, ¶ 54, 909 P.2d 92, 116. "Allegations of prosecutorial misconduct do not warrant reversal of a conviction unless the cumulative effect was such [as] to deprive the defendant of a fair trial." *Warner v. State*, 2006 OK CR 40, ¶ 197, 144 P.3d 838, 891 (quotations and citations omitted).

¶ 39 Appellant, first, argues that the prosecutor engaged in witness intimidation. He claims that, during pre-trial proceedings, the prosecutor threatened to charge Goff as an accessory after the fact. The record fails to support this claim.

¶ 40 In *Webb v. Texas*, 409 U.S. 95, 97–98, 93 S.Ct. 351, 353, 34 L.Ed.2d 330 (1972), the United States Supreme Court determined that a trial judge cannot substantially interfere with a defense witness's decision to testify. *See Clark v. State*, 1978 OK CR 108, ¶ 6, 585 P.2d 367, 368–69; *United States v. Serrano*, 406 F.3d 1208, 1215 (10th Cir. 2005). In *Webb*, the trial judge's threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand, and deprived the defendant of due process of law and his right to present witnesses. *Webb*, 409 U.S. at 98, 93 S.Ct. at 353.

¶ 41 This Court has extended the rule announced in *Webb* to prosecutors within our State. *Clark*, 1978 OK CR 108, ¶¶ 6–8, 585

---

6. I maintain that the jury should be instructed upon flight each time evidence of flight is presented. *Mitchell v. State*, 1993 OK CR 56, ¶ 3, 876 P.2d 682, 687 (Lumpkin, P.J., concurring in part/dissenting in part). Without the guidance of an instruction upon flight, the jury could jump to the conclusion that a defendant was *ipso facto* guilty just because he or she left the scene. *Id.*

P.2d at 369. In *Clark*, "we held that if a prosecutor threatens a defense witness with future charges by virtue of the witness' testimony, and the witness then refuses to testify, the defendant has been deprived of his right to present witnesses, and reversal of the conviction is required." *Mills v. State*, 1985 OK CR 58, ¶ 3, 733 P.2d 880, 883 (opinion on rehearing).

¶ 42 However, *Webb* does not stand for the proposition that merely warning a witness of the consequences of testifying demands reversal. *United States v. Smith*, 997 F.2d 674, 679 (10th Cir. 1993). In *Webb*, "the judge did not stop at warning the witness of his right to refuse to testify and of the necessity to tell the truth." *Webb*, 409 U.S. at 97, 93 S.Ct. at 353. Instead, the trial judge gratuitously singled out the defendant's sole witness, threatened the witness with prosecution, conviction and a consecutive sentence for perjury if he testified, and advised defense counsel that he should let the witness decline to testify when counsel nonetheless sought to call the witness to the stand. *Id.*, 409 U.S. at 97-98, 93 S.Ct. at 353.

▇▇▇▇ ¶ 43 Up till now, this Court has not had the opportunity to distinguish between an improper threat and a proper warning concerning the consequences of testifying. In *United States v. Pablo*, 696 F.3d 1280 (10th Cir. 2012), the Tenth Circuit Court of Appeals lay out this distinction.

> To determine if the government impermissibly interfered with a witness's decision to testify, we ask whether the government's interference was "substantial." *Id.* at 1216 (quotations omitted). "Interference is substantial when the government actor *actively discourages* a witness from testifying through threats of prosecution, intimidation, or coercive badgering." *Id.* (emphasis added). But "[t]he potential for unconstitutional coercion by a government actor significantly diminishes ... if a defendant's witness elects not to testify after consulting an independent attorney." *Id.* By way of example, in *Serrano*, we found no substantial interference where the prosecution merely raised to the district court a legitimate concern about witnesses incriminating themselves if they testified and

the district court simply expressed this concern to the witnesses and appointed independent counsel to advise them on that issue. *Id.*

*Pablo*, 696 F.3d at 1295-96, (*citing Serrano*, 406 F.3d at 1215-16).

▇▇▇▇ ¶ 44 We find that the analysis in *Pablo* is persuasive. In certain circumstances, a prosecutor may have an ethical duty to see that a witness is advised concerning her privilege against self-incrimination and the possible need for counsel. *See* Rule 3.8(c), Rule 4.3 and Rule 4.4, *Oklahoma Rules of Professional Conduct*, 5 O.S.Supp.2016, Ch. 1, App. 3-A; *ABA Standards for the Administration of Criminal Justice* § 3-3.2(b) (3rd ed. 1993). At the same time, a prosecutor is prohibited from calling a witness who the prosecutor knows will claim a valid privilege not to testify. *Howell v. State*, 1994 OK CR 62, ¶ 15, 882 P.2d 1086, 1091; *Namet v. United States*, 373 U.S. 179, 187-88, 83 S.Ct. 1151, 1155, 10 L.Ed.2d 278 (1963). The proper procedure in either of these circumstances is for the prosecutor to seek to make a record outside the presence of the jury. *Battenfield v. State*, 1991 OK CR 82, ¶ 13, 816 P.2d 555, 560; 12 O.S.2011, § 2104(C), and § 2513. An independent attorney who can provide competent counsel is a cornerstone of our judicial system. *Miller v. State*, 2001 OK CR 17, ¶ 48, 29 P.3d 1077, 1087. The court may assume that after consultation with competent counsel an individual knowingly and freely exercises her rights. *See Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S.Ct. 2398, 2405, 162 L.Ed.2d 143 (2005) (holding court will presume defendant knowingly and intelligently entered plea where plea entered upon the advice of competent counsel). Accordingly, we adopt the analysis from *Pablo*.

¶ 45 Turning to the present case, we find that the prosecutor did not substantially interfere with Goff's decision whether to testify. Neither the prosecutor nor the trial judge actively discouraged Goff from testifying. Although the prosecutor advised the court, defense counsel, and Goff that she was potentially facing criminal charges based upon the circumstances which followed the homicides, the prosecutor did not threaten to charge Goff if she testified. Instead, the prosecutor

properly sought to have Goff advised concerning her rights.[7] The prosecutor approached the judge at the pretrial motion hearing, raised a legitimate concern about Goff unwittingly incriminating herself if she testified and requested that the judge appoint her legal counsel. Defense counsel agreed with this request.

¶ 46 We note that the prosecutor's initial remarks at the pretrial hearing were slightly emphatic.[8] The better practice is for the prosecution to more subtly raise its concern. Nonetheless, the record reveals that Goff was not present during this portion of the hearing. When the trial judge later spoke with Goff, he simply advised her that he thought it was in her best interests to have counsel to advise and consult with and appointed her independent counsel.

¶ 47 Ultimately, Goff elected not to testify at Appellant's trial and invoked her Fifth Amendment privilege against self-incrimination. She testified that she based her decision upon the advice of her lawyer. As Goff based her decision upon the independent and competent advice of her counsel, we find that the prosecution did not substantially interfere with her decision concerning testifying. Accordingly, Appellant has not shown that error, plain or otherwise, occurred.

¶ 48 Second, Appellant asserts that the prosecutor argued facts not in evidence during closing argument. It is well established that the prosecution may not argue facts outside the record during closing argument. *Warner*, 2006 OK CR 40, ¶ 190, 144 P.3d at 890. It is equally well established that both the prosecution and the defense have the right to fully discuss the evidence from their standpoint, including the reasonable inferences and deductions therefrom. *Bland v. State*, 2000 OK CR 11, ¶ 97, 4 P.3d 702, 728.

¶ 49 Appellant argues that there was absolutely no evidence admitted at trial which would support the prosecutor's references to the homicides as "execution style." However, Appellant chooses to ignore the uncontroverted evidence that he shot both of the unarmed victims in the head at fairly close range. In particular, the evidence tended to suggest that Appellant shot Walker through the right ear, at close range, while Walker lay on the ground. *Pickens v. State*, 1993 OK CR 15, ¶ 59, 850 P.2d 328, 342 (finding no error where prosecutor used term "execution" to describe homicide involving shot to head at close range). As the prosecutor's argument was reasonably based upon the evidence, we find that Appellant has not shown that error, plain or otherwise occurred.

¶ 50 Third, Appellant argues that the prosecutor injected her personal opinion concerning the credibility of Appellant's testimony at trial when she commented on Appellant's demeanor on the witness stand. This Court has explicitly stated that it is improper for the prosecutor to state her personal opinion concerning the defendant's guilt. *Young v. State*, 1985 OK CR 18, ¶¶ 4–5, 695 P.2d 868, 869. Reading the prosecutor's comments in the present case in their full context, we find that the comments were proper. We note that the prosecutor prefaced her "I thought" remarks with the explanation that it was up to the jurors to decide what they thought about Appellant's demeanor on the witness stand. As such, we find that the comments were not an improper expression of personal opinion. *Carter v. State*, 1994 OK CR 49, ¶ 61, 879 P.2d 1234, 1253 (finding preface to remarks prevented them from being considered improper expression of personal opinion). Thus, we find that Appellant has not shown that error, plain or otherwise occurred.

¶ 51 Fourth, Appellant contends that the prosecutor improperly elicited sympathy for the victims when she reminded the jurors that Walker and Sawyer "will never be with

---

7. Appellant notes that the State had listed Goff as a witness in the charging Information but it was the defense which intended to call Goff to testify at trial. As the Information is the initial document filed in the case and the State must endorse "all the witnesses known to the district attorney at the time of filing" we find no fault in the prosecutor's action. 22 O.S.2011, §§ 301, 303.

8. Defense counsel advised Goff that she would not face charges if she testified.

their family here on earth again."[9] This Court has found that blatant appeals to sympathy, sentiment, or prejudice are improper. *Pryor v. State*, 2011 OK CR 18, ¶¶ 5–10, 254 P.3d 721, 722–25. The prosecutor's comments in the present case were made in response to defense counsel's request that the jurors "be compassionate, considerate, show mercy and understanding."[10] Although the prosecutor's comments bordered upon impropriety, the comments were invited and did no more than respond substantially to defense counsel's appeal. *Jackson v. State*, 2007 OK CR 24, ¶ 27, 163 P.3d 596, 604 (holding prosecutor's comment that case was important to people who could not speak or seek justice for themselves bordered upon impropriety of overtly seeking sympathy for victims); *Warner*, 2006 OK CR 40, ¶ 190, 182, 144 P.3d at 889 (holding invited comments which do no more than respond substantially in order to right the scale, do not warrant reversing a conviction). Accordingly, we find that Appellant has not shown that error, plain or otherwise occurred.

 ¶ 52 Fifth, Appellant argues that the prosecutor misstated the law during closing argument when she informed the jurors that they could not consider Appellant's age or have sympathy for his family when determining the issue of punishment. This Court has previously explained that prosecutors should not misstate the law in closing argument. *Florez v. State*, 2010 OK CR 21, ¶ 6, 239 P.3d 156, 158. Misstatements of the law which do not mislead the jury do not require relief. *See Hooks v. State*, 2001 OK CR 1, ¶ 49, 19 P.3d 294, 316; *Bland v. Sirmons*, 459 F.3d 999, 1015 (10th Cir. 2006)

 ¶ 53 Although the prosecutor's comments in the present case were somewhat inartful, they do not rise to the level of plain error. Both Appellant and the State agree that the prosecutor alluded to the trial court's instruction based upon Instruction No. 10-8, OUJI-CR(2d) (Supp.2000) which stated that the jurors were to "not let sympathy, sentiment or prejudice enter into their deliberations."[11] We note that evidence of

mitigating circumstances is inadmissible in single stage, non-capital jury trials in Oklahoma. *Malone v. State*, 2002 OK CR 34, ¶ 7, 58 P.3d 208, 210. As the prosecutor explicitly informed the jurors to consider the evidence in the case, we find that the challenged comments did not mislead the jury. Accordingly, we find that Appellant has not shown that plain error occurred.

 ¶ 54 Reviewing the entire record in the present case, the cumulative effect of the prosecutor's comments did not deprive Appellant of a fair trial. *Malone*, 2013 OK CR 1, ¶ 43, 293 P.3d at 212. The evidence of Appellant's guilt was particularly strong. His sentences were driven by the circumstances of the crimes. Thus, we find that prosecutorial misconduct did not deprive Appellant of a fundamentally fair trial and we deny this proposition of error.

### IV.

¶ 55 In his fourth proposition of error, Appellant challenges the effectiveness of his counsel at trial. This Court reviews ineffective assistance of counsel claims under the two-part test mandated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *Mitchell v. State*, 2011 OK CR 26, ¶ 139, 270 P.3d 160, 190. The *Strickland* test requires an appellant to show: (1) that counsel's performance was constitutionally deficient; and (2) that counsel's deficient performance prejudiced the defense. *Bland*, 2000 OK CR 11, ¶ 112–13, 4 P.3d at 730–31 (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064).

¶ 56 The Court begins its analysis with the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Appellant must overcome this presumption and demonstrate that counsel's representation was unreasonable under prevailing professional norms and that the challenged action could not be considered sound trial strategy. *Id.*

---

9. Tr. VII, 1413–14.

10. Tr. VII, 1413.

11. O.R. 550.

¶ 57 When a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed. *Phillips v. State*, 1999 OK CR 38, ¶ 103, 989 P.2d 1017, 1043 (*citing Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069). To demonstrate prejudice an appellant must show that there is a reasonable probability that the outcome of the trial would have been different but for counsel's unprofessional errors. *Bland*, 2000 OK CR 11, ¶ 112, 4 P.3d at 730–31. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011).

¶ 58 Appellant asserts that defense counsel was ineffective for failing to challenge the flight instruction. We determined in Proposition Two that the trial court properly gave this instruction. Therefore, there is not a reasonable probability that had counsel raised an objection the result of the trial would have been different. *Bland*, 2000 OK CR 11, ¶ 117, 4 P.3d at 732.

¶ 59 Appellant further asserts that defense counsel was ineffective for failing to challenge the prosecutor's comments which he asserted constituted prosecutorial misconduct in Proposition Three. We determined in Proposition Three that Appellant had not shown that error, plain or otherwise, had occurred. As such, we find that Appellant has not established a reasonable probability that the outcome of the trial would have been different but for counsel's failure to raise the challenge that he now raises on appeal. *Glossip v. State*, 2007 OK CR 12, ¶¶ 110–12, 157 P.3d 143, 161.

██ ¶ 60 Appellant further asserts that trial counsel was ineffective for failing to have Walker's shirt tested for the presence of gunshot residue. It is apparent from the record that trial counsel did not have the shirt tested. Medical Examiner, Joshua Lanter, M.D., testified that he had observed what appeared to be soot around the gunshot hole in Walker's shirt, however, he admitted that the stain on the shirt had not been tested. On cross-examination, trial counsel secured Lanter's explanation that soot or gun powder on the shirt would give investigators an idea of how far away the gun was from Walker's person when it was fired. Lanter stated that typically a gun had to be about one foot or closer to leave soot on a white shirt. On redirect, Lanter admitted that an expert would have to forensically test the actual gun and ammunition used to determine the exact distance.

¶ 61 Firearms Examiner, Joy Patterson, testified that she was qualified to determine distance from gunshot residue. She explained that the process was complex. The first part of the process requires testing of the victim's clothing. The second part of the process requires testing of the actual gun and ammunition used during the shooting. Neither Patterson nor anyone else had tested Walker's shirt to determine if the substance was, in-fact, gunshot residue.

¶ 62 Although it is clear that trial counsel failed to have Walker's shirt tested for the presence of gunshot residue, we find that Appellant has not shown a reasonable probability that the outcome of the trial would have been different but for counsel's omission. Nothing in the record establishes what the omitted testing would reveal.

██ ¶ 63 Simultaneous with the filing of his Brief, Appellant filed his Application for Evidentiary Hearing on Sixth Amendment Claims. Appellant seeks to supplement the record on appeal pursuant to Rule 3.11(B)(3), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2016) and requests an evidentiary hearing based upon his claim that counsel was ineffective for failing to have Walker's shirt tested. We review this motion pursuant to the analysis set forth in *Simpson v. State*, 2010 OK CR 6, ¶ 53, 230 P.3d 888, 905–906.

¶ 64 Reviewing the Affidavit and Criminalistics Examination Report attached to Appellant's application, we find that Appellant has not provided sufficient information to show this Court by clear and convincing evidence that there was a strong possibility that defense counsel was ineffective. *Id.* From the materials attached to the application, it appears that Appellant has had the shirt tested. However, this was only the first part of the process. As Patterson explained in her testimony, both the gun and ammunition must be

tested for completion of the distance determination process. Thus, we are entirely left to speculate as to what completed testing would reveal. *Lott v. State*, 2004 OK CR 27, ¶ 135, 98 P.3d 318, 351 (holding Appellant must present evidence, not speculation, second guesses or innuendo in order to meet clear and convincing standard of Rule 3.11); *Stemple v. State*, 2000 OK CR 4, ¶ 61, 994 P.2d 61 (denying ineffective assistance claim where the appellant failed to show what the witness' testimony would have been). In light of the testimony of the several eyewitnesses as well as Appellant's own admission, we find that he has not shown a reasonable probability that the outcome of the trial would have been different absent counsel's omission. Appellant has not shown ineffective assistance of counsel under *Strickland*, therefore, his application is **DENIED**. *Simpson*, 2010 OK CR 6, ¶ 53, 230 P.3d at 905–906. Proposition Four is denied.

## V.

¶ 65 As to Proposition Five, we find Appellant was not denied a fair trial by cumulative error. *Ashinsky v. State*, 1989 OK CR 59, ¶ 31, 780 P.2d 201, 209 ("[A]n accumulation of error argument will be rejected where all of the alleged errors are meritless."); *Bechtel v. State*, 1987 OK CR 126, ¶ 12, 738 P.2d 559, 561; Therefore, Proposition Five is denied.

### DECISION

¶ 66 The judgments and sentences are hereby **AFFIRMED**. Appellant's Application for Evidentiary Hearing on Sixth Amendment Claims is **DENIED**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2017), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

LEWIS, V.P.J.: Concur

JOHNSON, J.: Not participating

SMITH, J.: Concur

HUDSON, J.: Concur